IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00062-CR

 

David Earl Hunter,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 361st District Court

Brazos County, Texas

Trial Court No. 07-04555-CRM-361

 



MEMORANDUM  Opinion



 








Appellant David Hunter was charged by information
with driving and operating a motor vehicle with an invalid driver’s license. 
In a November 8, 2007 order, the county court transferred this case to district
court in Brazos County, where Hunter had a pending felony case.  As a result of
the transfer and upon the district court’s felony judgment revoking community
supervision and eight-year state jail sentence (which Hunter is appealing in
Cause No. 10-00053-CR), the State moved to dismiss this case.

            Hunter filed a pro se notice of appeal
(counsel was subsequently appointed); it does not state what order he is
appealing.  The State filed a motion to dismiss this appeal, asserting that it
should be dismissed because there is no judgment to appeal and the case was
dismissed.  We requested a response to the State’s motion by May 16, 2008;
Hunter has not filed one.

            An appeals court has jurisdiction in a
criminal case only when expressly provided by law.  Kelly
v. State, 151 S.W.3d 683, 685 (Tex. App.—Waco 2004, no pet.).  We are not aware of any statute allowing a defendant the
right to appeal an order transferring a case or a dismissal order.  Because we
have no jurisdiction, we grant the State’s motion and dismiss this appeal.

 

PER CURIAM

 

Before Chief Justice Gray,

            Justice
Vance, and

            Justice Reyna

Appeal dismissed

Opinion delivered and
filed June 18, 2008

Do not publish

[CR25]

 

 






ssed in his [Vernon’s expert’s] report:  

 

a.     
Plaintiff’s right breast
implant was improperly placed; 

 

b.     
Plaintiff required a pulmonary
specialist following her surgery; 

 

c.      
Plaintiff required a
radiologist to review her chest x-ray film; 

 

d.    
Plaintiff required a referral
to a cosmetic surgeon; 

 

e.     
Plaintiff’s medical records
were altered or fabricated; 

 

f.       
Dr. Benson’s care will cause
future pain and mental anguish; 

 

g.     
Dr. Benson’s care will cause
Plaintiff future medical expense; 

 

h.     
Dr. Benson’s care caused
physical incapacity, disability and disfigurement; 

 

i.       
Dr. Benson’s care will cause
future physical incapacity, disability and disfigurement; and 

 

j.       
Dr. Benson’s care caused
Plaintiff to lose earnings in the past.

 

CR at 33.  (Emphasis added).

The Motion

            These same complaints were essentially
converted to the grounds for Benson’s 26-page “Motion to Dismiss Pursuant to
Section 74.351(B).”  CR at 73.  The prayer to that motion reiterates, almost
verbatim, the same complaints but asserts that rather than simply objectionable
defects in the expert report, they are each claims that are omitted from
the report, thus entitling Benson to have each of these claims dismissed and
upon which he should recover his attorney fees.  In Benson’s motion to dismiss,
he asserts the expert

report is deficient as to the following claims
in Plaintiff’s Original Petition that are not even addressed in his [Vernon’s expert’s] reports:

 

a.  Dr. Benson was negligent by improperly placing
the right breast implant;

 

b.  Dr. Benson was negligent by not referring
Plaintiff to a pulmonary specialist following her surgery;

 

c.  Dr. Benson was negligent by sending Plaintiff
to an urgent care clinic for a chest x-ray instead of referring her directly to
a radiologist;

 

d. Dr. Benson was negligent by not identifying the
cause of swelling or asymmetry of the right breast;

 

e.  Dr. Benson was negligent by failing to assure
proper placement of the right implant;

 

f.   Dr. Benson was negligent by altering or
fabricating Plaintiff’s medical records;

 

g.  Dr. Benson’s care will cause future pain and
mental anguish;

 

h.  Dr. Benson’s care will cause Plaintiff future
medical expenses;

 

i.   Dr. Benson’s care caused physical incapacity,
disability and disfigurement;

 

j.   Dr. Benson’s care will cause future physical
incapacity, disability and disfigurement; and

 

k.  Dr. Benson’s care caused Plaintiff to lose
earnings in the past.

 

CR at 96 (emphasis added).  

The Narrow View

            In my humble opinion, Benson’s view of
what constitutes a health care liability claim is entirely too narrow.  In
at least one aspect, the Court erroneously joins him in that narrow view. 


            Benson’s objections and his motion
attack what are actually either individual acts of a cause of action for
medical malpractice or allegations of different types of damages resulting from
such acts.  Benson’s motion is somewhat like a hybrid special exception and
a no-evidence-motion-for-summary-judgment attacking the lack of expert
evidence in the report of specific elements of a negligence claim.  But the
motion does not attack elements of a cause of action.  Rather, it attacks the
absence of reliable expert evidence in the expert report of conduct or types of
damages, asserting that each is a separate health care liability claim. 
It thus appears that Benson attempts to strike from the case every allegation
in Vernon’s petition that does not find support in the expert’s report or which
is contrary to the view of the evidence, such as Vernon’s hospital record,
which incidentally is a record created by Benson and which Vernon alleges was
falsified or altered.  This is not how a medical expert’s report is properly
challenged, nor does it fulfill the purpose the statute was designed to fulfill
– to limit frivolous medical malpractice suits.  The trial court recognized
this problem.  See RR at 23-26.

            Thus, the first question that we
should address is whether the motion to dismiss for the failure to file an
expert report in support of a health care liability claim allows the defendant
to break the pleading down into allegations of the individual acts and types of
damages asserting that each act or type of damage is a separate claim and,
therefore, requires a report for each; or whether there is some other grouping
of the alleged acts and injuries that constitute a health care liability claim
distinct from the otherwise minimal allegations necessary for otherwise
adequately pleading a cause of action for medical malpractice.

            The Court, I believe inadvertently, gets
drawn into Benson’s tortured analysis.  The Court initially states that in
Vernon’s petition there are allegations of negligence resulting in two
injuries:  the pneumothorax and asymmetry of her right breast.  Maj.
Op., pg. 5.  The Court then notes that Benson complains that Vernon’s expert
report[1]
fails

to address:  (1) improper placement and
failure to assure proper placement of the right breast implant; (2) failure to
refer Vernon to a respiratory specialist; (3) failure to have Vernon obtain a
chest x-ray from an urgent care clinic [sic]; (4) failure to identify the cause
of swelling and asymmetry of the right breast; (5) alteration and fabrication
of medical records; (6) future pain and mental anguish; (7) future medical
expenses; (8) past and future physical incapacity, disability, and disfigurement;
and (9) lost earnings.

 

Maj. Op., pgs. 5-6.

            I note that these 9 items correspond
to the 11 deficiencies identified in Benson’s motion to dismiss but they track neither
the 13 acts of negligence alleged in the petition, CR at 4-5, nor the 7 types
of damages alleged in the petition, CR at 5-6, to have resulted from the 13
acts of negligence.  

            But after a general statement by the
Court that Vernon’s allegations of negligence resulted in the two identified injuries,
without further analysis the Court then proceeds in a discussion which separates
and regroups the allegations in the petition and summarizes the allegations as
four claims that, if determined to be health care liability claims, must
each be the subject of an expert report.  Those four claims, in the
order discussed in the Court’s opinion, are:  1. Pneumothorax; 2.
Asymmetry of the right breast; 3. Alteration and fabrication of medical
records; and 4. Damages.  I will address the damages discussion first
because it, overall, has the least problems.

Damages are not a health care liability claim –
but then what are damages?

            In the course of its discussion, the
Court appropriately holds that an allegation of particular damages is not a health
care liability claim that requires an expert report, stating that in Vernon’s expert report she “is not required to prove up Vernon’s damages.”  Maj. Op.,
pg. 7.  I find no error in this discussion.

            Immediately preceding that discussion,
however, the Court holds that asymmetry of the right breast is a health care
liability claim that must be addressed in an expert report.  The
Court then concludes that, because the report fails “to inform Dr. Benson of
the specific conduct sued on with respect to asymmetry of the right breast[,]”
that claim must be dismissed.  Id.  This implies that the
allegations in the petition regarding the asymmetry of the right breast are,
standing alone, allegations of a health care liability claim that must then be
supported by an expert report as to that particular claim.

            The problem presented is deeper than
the Court has analyzed.  Is the asymmetry of the right breast an
allegation of an element of negligence, an element of a claim, or is it simply
an allegation of a particular type of injury, i.e., a type of damage, resulting
from other allegations of negligence?  Actually, it may be any or none,
depending on its context.  

            At least part of the problem with
putting this allegation in the proper context is the legislative effort to have
the expert report serve the function of what the petition should do—namely,
inform the health care providers of the reason why they have been sued.

            In the petition, Vernon alleges as an
act of negligence that Benson failed “to assure proper placement of the right
implant at the time of surgery.”  CR at 5.  But when closely examined,
this allegation is very different from what Benson and the Court generically
refer to as the claim for “asymmetry of the right breast.”  Asymmetry of
the right breast, as referred to by Benson and the Court, cannot be a complete allegation
of a cause of action for negligence.  Negligence consists of four elements: 
duty, breach, proximate cause, consisting of two sub-elements – cause in fact
and foreseeability, and damages, i.e., an injury.  See Western
Invs., Inc. v. Urena, 162 S.W.3d 547, 551 (Tex. 2005).  Injury is comprised
of many categories or types of damages.  

            Likewise, “asymmetry of the right
breast” cannot be a complete allegation of a health care liability claim. 
On its face, it is, at least, a reference to the breach of a duty as a
description of the result of a negligent act.  And, at the very least, it
is an adequate reference to the injury as a damage in the category of
disfigurement.  But other damages will naturally and normally flow from
this conduct and injury, including future surgical cost to fix the asymmetry
and the related pain and suffering from that future surgery.  In this
regard, the alleged act of negligence is Benson conducting the surgery when he failed
to possess the requisite skill to properly perform a breast augmentation, in
essence, inadequate skill to assure proper placement of the breast, which is
separately alleged in the petition, CR at 4-5, and the expert report, CR at 59,
66-67, but is not addressed in the Court’s opinion.  I presume asymmetry
could also relate to the allegations in the petition and report that the
surgery was performed at an inappropriate or inadequate medical facility.

Summary

            Thus, I believe Benson and the Court
have erroneously focused on an element of a health care liability claim, in
fact, only one aspect of the injury element, the damages flowing from the claim,
and the Court has inexplicably required an expert report on this specific
allegation of a specific type of damages.  But otherwise, the Court has properly
held that damages need not be proven up by the expert in the expert
report.  I believe the Court’s error is the result of first the parties’,
then the trial court’s, and now this Court’s failure to properly identify what
is meant by the legislature’s reference to a health care liability claim. 
The result is that, in regard to this case, Vernon will be unable to recover some
damages that allegedly occurred as the result of allegations of negligence
which Benson did not directly attack in his motion to dismiss.  I believe
this results in an erroneous judgment of this Court, and therefore, I must
dissent to this holding.

II

Many claims under a “good” report on one
claim, or many claims require many reports?

 

            In this proceeding, another holding of
some importance is deciding the issue:  to the extent there are multiple health
care liability claims asserted in the petition, does each health care liability
claim asserted in the petition have to be supported by an expert report? 
I believe that this is the first time this issue has been so squarely addressed. 
The statute does not expressly require it.  Rather, a simple reading of
the statute indicates that if a health care liability claim is asserted by the
plaintiff, the plaintiff must then file an expert report as to each physician
or health care provider against whom a claim is asserted.  See
Tex. Civ. Prac. & Rem. Code Ann.
§§ 74.001(a)(13); 74.351(a) (Vernon 2005 & Supp. 2008).  It really is not
clear from the statute that the pleading is broken up into each of the various
claims and that each and every claim that is a health care liability claim must
then be supported by an expert report.  And of course, failure to file the
required report will result in dismissal of the health care liability claim if
it is properly challenged.  Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(b) (Vernon Supp. 2008).  Thus, if
the Court finds that one health care liability claim is not supported by a
timely filed expert report, that specific individual unsupported claim is
essentially taken out of the suit by being dismissed.  I believe this is
the only logical reading of the statute.  

            If every health care liability claim included
in a single petition did not have to be  separately supported by a timely filed
expert report, one nominal, but technically valid, claim could hold in court
for trial any number of totally bogus, completely frivolous claims.  I do
not believe that could possibly be what the legislature intended. 
Accordingly, I concur in the judgment to the extent that it implies that for
each separately identifiable and alleged health care liability claim the
plaintiff must file an expert report.  

            I recognize that one document can be
the required expert report for several different claims if they are separately
and independently supported in the report.  Thus, one document can support
many health care liability claims; but every health care liability claim must
be the subject of a timely filed expert report.

Four corners rule? — Not really

            Part of the confusion with regard to
the need for and the adequacy of a separate expert report comes from the reference
to the so-called “four-corners-rule.”  The Court indicates that we do not
look beyond the four corners of the expert report to see if it is
adequate.  If this were actually a proper characterization of what we do,
a single report on a single claim would necessarily support all the claims in
the petition even if the expert report did not address a particular
claim.  In fact, a perfectly adequate expert report on a health care liability
claim not even alleged would be adequate for the four corners rule to hold the health
care provider in court. 

            To avoid this erroneous construct, we actually
first look to the petition to see what health care liability claims are alleged
and then look to the expert report to see if the report, which may even be in
more than one document, is an adequate expert report with regard to each claim
alleged in the petition.  Thus, at the very least, we use an eight corners
rule.  We look at two documents; first to the petition for identification of each
health care liability claim and then to the expert report to see if the report
is adequate to comply with the requirements of an expert report regarding each health
care liability claim alleged in the petition.

Four more corners?

            But we really cannot stop with an
examination of the petition and the expert report.  We must also look at
the motion to dismiss.[2] 
If the motion to dismiss does not move to dismiss one of the
individual/multiple health care liability claims raised in the petition, it
does not matter that there is no expert report in support of that claim. 
If a health care liability claim is not attacked by a motion to dismiss because
no expert report is filed as to a particular claim, it is irrelevant that no
expert report was filed with regard to that claim.  Thus, to successfully
have a particular health care liability claim dismissed, the specific claim
which is omitted must be identified in the motion to dismiss.  

            Therefore, we are actually looking to at
least three different documents, twelve corners, to see if a health care liability
claim must be dismissed because it is not properly supported by an expert
report:  1) the petition; 2) the motion to dismiss; and 3) the expert report. 
Thus, I believe the references to the four corners rule and purported
limitation of our review to the expert report have unwittingly caused confusion
in how to conduct the complete analysis of an expert report for a health care
liability claim.

III

Medical Records

            Another holding of the Court is that
allegations of alteration or falsification of the medical records of a patient
is not a health care liability claim.  

            With this holding I cannot agree.

            There must be a standard in the
medical industry for the extent and nature of what gets entered by the physician
or health care provider in the medical records of a patient.  All
treatment of a patient in the future is based upon the patient’s medical history,
including the record of treatment, as recorded in the patient’s medical
records.  If another physician, such as a specialist, must be consulted
for some reason, or if a physician is relieved of his duties to a patient and
another assumes treatment, the other physician or health care provider must be
able to rely on the entries in the patient’s medical records as being complete
and accurate.  I would be very surprised if there were no accepted
standards for the entries to be made in the medical records of a patient. 
Thus, alteration or falsification of medical records would be a health care liability
claim as an “other claimed departure from accepted standards of medical care,
or health care, or safety or professional or administrative services directly
related to health care…”  Tex. Civ.
Prac. & Rem. Code Ann. § 74.001(a) (13) (Vernon 2005).  Thus, it
initially appears that because the expert report in this proceeding does not
address the applicable standard related to the preparation of medical records,
the breach of that standard, and the general connection to the injury caused as
a result of the breach, I would be compelled to dismiss this claim of Vernon’s.


            If, however, we turn back to the
motion to dismiss, Benson did not mention this claim in the motion, except in
the final summary paragraph, the prayer, of the motion to dismiss (paragraph
63.f).  CR at 96.  Given the need to know with some degree of certainty
both what the claims brought by the plaintiff are, as well as what claims the
medical health care provider seeks to have dismissed, and that in this case
Benson attacks the expert report as being conclusory and providing inadequate
notice, I cannot hold that the trial court abused its discretion if it
determined that the motion to dismiss was not sufficiently specific to seek
dismissal of this claim.  In this conclusion, I am mindful that the related
allegation which was only listed like other elements in the motion to dismiss
but labeled as a claim, alone, is not actually a complete health care liability
claim.

IV

Entitled to an Extension?

            The question thus becomes, if the health
care provider moved for dismissal of a specific claim pled in the petition
because part of the claim was not directly addressed in the expert report that
was timely received, does the plaintiff nevertheless get the opportunity to
cure the deficiency?  If we look at the document as an expert report for
each separate claim, then necessarily, if a document does not address any
element of a particular claim, no expert report has been filed in support of
the claim and, therefore, the claim not addressed in the expert report must be
dismissed.  The report as to that particular claim is not merely
deficient.  The expert report as to that particular claim does not
exist.  Thus, it is no report at all.  See Lewis v.
Funderburk, 253 S.W.3d 204, 211 (Tex. 2008) (Willett, J., concurring); Ogletree
v. Matthews, 262 S.W.3d 316, 323 (Tex. 2007) (Willett, J., concurring).  

            In this proceeding, the Court has
determined that Vernon does not get the opportunity to cure what I believe are
only deficiencies, not omission of claims, in the expert report.  The Court holds
that there was no report at all as to the claim for asymmetry of the right breast
and that the claim that the medical records were altered or falsified was not even
a medical health care liability claim.  As stated above, I believe the Court
errs in both of these determinations.

Mulligan due to inadequate ability to map the
claims?

            In this proceeding, the trial court
was clearly concerned about the plaintiff being stripped of her medical
malpractice claims by a procedure being used like a hybrid special appearance
and no-evidence-motion-for-summary-judgment.  RR at 23-26.  I agree with the
trial court.

            Based upon my review of the record, I
would give the litigants the judicial equivalent of a mulligan—a do over. 
The petition does a relatively poor job of organizing the facts or allegations
as complete health care liability claims.  Thus, it is not surprising that
the expert report was somewhat generic and general.  The petition and expert
report were, however, specific enough for Benson to make 19 pages of detailed
objections about the alleged deficiencies in the report.  And the motion to
dismiss should fail because rather than attacking whole claims, it attacked sub-elements
of the various elements of a health care liability claim.  Thus, the motion
attempted to slice and dice the claim into the minute sub-parts and resulted in
overcompensating for the general nature of the pleadings and expert report.

            There was a general lack of proper focus
in all 12 corners under review on what health care liability claims were being
asserted and properly attacked for dismissal.  Thus, I would affirm the
trial court’s order to the extent it overruled the motion to dismiss but reverse
the trial court’s order to the extent it overruled the objections to the
adequacy of the expert report.  I would remand this proceeding to the trial
court and restart the timetable for filing the expert report/objections/motion-to-dismiss. 
This would allow the parties the opportunity to clean up the petition with a
pleading and an expert report in which each separately identifiable health care
liability claim, which should include the identification of the applicable duty
(the standard of care), the breach of the duty, and generally the causal
connection between that breach and the injury that resulted from the breach,
could be specifically identified or labeled by the plaintiff, Vernon, and then
supported in an expert report.  The defendant, Benson, could then file objections
to the deficiencies in the report or a motion to dismiss focused on an analysis
of the claims omitted from the expert report supporting each health care
liability claim asserted by the plaintiff.

            Based on the information currently
available to me in this record, I could not hold that the trial court abused
its discretion by refusing to dismiss any claim.  And I would be compelled to hold
that the expert report, while somewhat loose, touches on some of the aspects of
an expert report of each health care liability claim asserted, but is otherwise
inadequate to adequately apprise the doctor of the alleged standards that were
breached and how that breach proximately caused an injury.  In this regard, I again
note that the pleadings and the expert report were sufficiently specific for Benson
to be able to frame objections regarding the deficiencies in the expert
report.  Vernon should, therefore, be granted an extension of 30 days from the
date the mandate in this appeal is issued to amend the expert report.  

            In the alternative, given that in this
proceeding it is almost impossible under the current state of the pleadings to
map the elements for each claim, find the support for each claim in the expert
report, or find a clear challenge to a claim in the motion to dismiss, as
opposed to the attack on the sub-elements of the claim, I would, in the
interest of justice, require that the parties start the process over.

            Because the Court fails to so hold, I
respectfully dissent except as otherwise noted herein.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Concurring
and Dissenting opinion delivered and filed August 12, 2009

Publish









[1]
The report is comprised of two documents
from the same doctor, which comprise the one report.





[2]   We also cannot overlook the objections
asserting deficiencies in the expert report.  It is entirely possible, as in
this case, that the detailed nature of the objections reveals the report may be
deficient but does not totally omit any claim.