In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-12-00293-CV
_____

**SILSBEE OAKS HEALTH CARE, L.L.P., Appellant**

**V.**

**CATHY MELANCON, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF MURIEL BOGGAN, DAVID
BOGGAN, JOHN BOGGAN, BRUCE BOGGAN, SUSAN RYE, AND CAROL
NASH, Appellees**

**On Appeal from the 88th District Court
Hardin County, Texas
Trial Cause No. 52315**

## MEMORANDUM OPINION

This interlocutory appeal concerns whether the trial court abused its discretion by denying a health care provider's motion to dismiss a health care liability claim. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001-74.507 (West 2011 & Supp. 2012) (Texas Medical Liability Act); Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (West Supp. 2012). In its appeal, the health care provider, Silsbee Oaks Health Care, L.L.P., contends that a report of a pathologist filed to support the claimants' wrongful death and survival

1

claims did not constitute an "expert" report as defined by the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5) (West 2011). In response, the claimants, David Boggan, John Boggan, Bruce Boggan, Susan Rye, Carol Nash, and Cathy Melancon, individually and as the personal representative of the Estate of Muriel Boggan,[1] argue that Silsbee's appeal is untimely. If the appeal is deemed to have been timely, Silsbee argues in the alternative that the reports fail to meet the requirements of the TMLA with respect to several of the theories of liability that are raised in the Boggans' petition.

We conclude that Silsbee's appeal is timely. We also conclude that the reports, with respect to one of the theories in the Boggans' petition, complies with the requirements of the TMLA; therefore, we hold the trial court did not abuse its discretion by denying Silsbee's motion to dismiss.

## Background

Muriel Boggan choked while eating a doughnut and died. When the incident occurred, Muriel was a resident in a nursing home operated by Silsbee. After Muriel's death, Muriel's children filed wrongful death and survival claims against Silsbee, alleging that its negligence caused Muriel's personal injury and death. The Boggans' petition alleges that while at the nursing home, Muriel was to receive a pureed diet but

---

[1]The individuals who brought suit are Muriel Boggan's children.

that instead, Silsbee's employees fed her a doughnut on which she choked, causing her death.

In addition to their claim that Silsbee is responsible for the decision that its employees made to give Muriel a doughnut, the Boggans alleged several direct liability claims. Their direct liability claims include theories of negligence based on alleged inadequate hiring, inadequate staffing, inadequate training, inadequate record keeping, and for Silsbee's alleged negligence in failing to transfer Muriel to another facility.

With their original petition, filed June 27, 2011, the Boggans served Silsbee with two expert reports, one from the pathologist who performed Muriel's autopsy, Dr. Tommy J. Brown, and the other from a dietician, Bonnie L. Berube. Silsbee objected within the period allowed for filing objections to these reports.

With respect to Berube's report, Silsbee alleged that her report failed to provide factual details sufficient to notify it of what was claimed that it did or should have done to prevent Muriel's death. Also, Silsbee objected to Berube's qualifications regarding the standard of care that applied to Muriel's care, and it objected that Berube's report did not provide sufficient specific factual detail to demonstrate causation.

Regarding Dr. Brown's report, Silsbee objected that Dr. Brown was not qualified to express opinions about the standard of care that applied to Muriel's care. Silsbee also objected that Dr. Brown's report failed to adequately explain how Silsbee's alleged acts and omissions proximately caused Muriel's injuries and damages. Silsbee's motion to

3

dismiss suggests that the deficiencies in the reports required the trial court to dismiss the suit and to grant it an award of attorney's fees and costs. In September 2011, the trial court overruled Silsbee's objections and Silsbee appealed.

## Timeliness of the Appeal

Silsbee perfected an appeal within twenty days of the trial court's order denying its motion to dismiss. The question regarding the timeliness of Silsbee's appeal concerns whether the trial court's ruling on Silsbee's objections to the reports of September 2011 was a denial of its suggestion that Silsbee's case be dismissed.

The Boggans challenge our jurisdiction over the appeal on the ground that Silsbee was required but failed to appeal from the trial court's September 2011 order. *See* Tex. R. App. P. 26.1(b). In arguing that the September order is appealable, the Boggans characterize the trial court order that followed Silsbee's June 2011 filing as an order denying Silsbee's motion to dismiss. Silsbee argues that its objections to the reports are not properly characterized as having been a motion to dismiss.

Under section 51.014(a)(9), a party may appeal from an interlocutory order that denies relief "sought by a *motion* under Section 74.351(b)." Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (emphasis added). Under Section 74.351(b), the health care provider who has not been served with an expert report within a period of 120 days from the date the claim is filed may file a motion seeking an award of attorney's fees, costs, and a dismissal of the claim, with prejudice. *See* Tex. Civ. Prac. & Rem. Code Ann. §

4

74.351(b). Although Silsbee titled the pleading leading to the trial court's September 2011 ruling as "Objections," the instrument that it filed suggested that the reports filed by the Boggans were so defective that dismissal was required. Thus, Silsbee's objections can be characterized as a motion seeking dismissal, but answering that question does not mean the trial court ruled on the request for dismissal when it overruled Silsbee's objections.

Whether the trial court could properly grant a motion to dismiss at the time it signed the September 2011 order provides insight into the trial court's intent when overruling the objections. With respect to the consequences of failing to timely file an expert report within 120 days of filing the claim, in *Funderburk* the Texas Supreme Court observed:

> Only subpart (b) provides for dismissal and fees. Subpart (*l*) provides for challenges to inadequate reports, but says nothing about dismissal or fees. That is because some challenges--specifically those filed within the first 120 days--*cannot* seek dismissal or fees until the 120-day window has closed. Only when that window has closed and no report has been filed can a defendant move for dismissal and fees under subpart (b).

*Lewis v. Funderburk,* 253 S.W.3d 204, 207 (Tex. 2008). A party may submit additional or revised reports during the 120 day period or for an additional period of thirty days, if the trial court has found expert reports to be deficient and allowed them to be cured. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c); *Ogletree v. Matthews*, 262 S.W.3d 316, 321 (Tex. 2007). Thus, because the 120 day period provided for filing expert reports had not expired when the trial court ruled on Silsbee's objections to the expert reports, the

5

trial court was not authorized when it signed the September 2011 order to grant Silsbee's request to dismiss. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a); *Funderburk*, 253 S.W.3d at 207.

Even if Silsbee's "Objections" are construed as having asked for a dismissal, it is apparent that the trial court could rule on the objections without necessarily granting or denying Silsbee's request for dismissal. As we have discussed, the trial court was not authorized to dismiss during the period it entered the September 2011 order. We also note that the trial court's September 2011 order expressly denied Silsbee's objection, but took no action on Silsbee's suggestions asking for dismissal and an award of attorney's fees and costs. Additionally, the trial court first expressly denied Silsbee's request to dismiss in its June 2012 order.[2]

The trial court's silence in its September 2011 order regarding Silsbee's request for dismissal does not, in our opinion, imply that the trial court intended to rule on Silsbee's request for attorney's fees, costs, or to dismiss. Additional reports could still be filed within the 120 day period provided by section 74.351(a). In our view, the trial court's silence regarding Silsbee's request to dismiss, as well as its request for attorney's fees and costs, was a non-ruling on those aspects of Silsbee's "Objections."

We conclude the order of September 2011 was not an appealable order because it did not deny any of the types of relief that are the subject of an interlocutory appeal. *See*

---

[2]We expressly reserve judgment on the question of whether, under different facts, the September 2011 order would have been appealable.

6

Tex. Civ. Prac. & Rem. Code Ann. §74.351(b). The order of June 2012 is appealable, as that order expressly denied Silsbee's request to dismiss and the trial court signed it at a time it could grant an order of dismissal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b). We conclude Silsbee timely perfected its appeal from the trial court's June 2012 order; it was not required or authorized to appeal from the September 2011 order because the trial court did not rule on the request to dismiss at that time. *See* Tex. R. App. P. 26.1(b).

Expert Reports

In its sole issue, Silsbee contends that the trial court abused its discretion in failing to dismiss all but one of the Boggans' claims. While we agree that the reports the Boggans filed do not address each of the individual theories of liability articulated in their live pleadings, they are adequate to address the claim that Silsbee's employees violated the applicable standards of care by feeding Muriel a doughnut causing her to choke, which then led to her death. Silsbee does not challenge the adequacy of the reports with respect to that claim.

The Boggans filed two expert reports, one from a dietician and one from a pathologist. The report of Berube states that she is a dietician of record in numerous facilities where she provides advice according to regulations established by several organizations that are named in the report. Her clients include facilities like Silsbee, to whom she gives nutritional recommendations for geriatric residents like Muriel. Berube's

7

report indicates that she sometimes provides recommendations to modify diets for patients who have chewing problems. Berube's report, with respect to Muriel, states that:

> The recorded weight was 97 pounds. Assessment is hard to read, charting lined through, no information regarding medications, labs, diet order, percent of intake, type of supplements, clinical physical nutritional assessment, family conferences and meetings with care team were noted. Risks for aspiration and nutritional status were not noted.

> Ms. Boggan aspirated and died on December 28, 2009. She had been given a doughnut which was not to be served on a pureed diet. To do so was clearly below the standard of care. She was to eat with supervision only.

According to Berube, Silsbee breached the standard of care because "[w]hen the tube feeding regime was changed, [Muriel] was given numerous oral liquid supplements that were not thickened to the pudding consistency recommended by the Speech Language Pathologist." The doughnut, according to the dietician's report, should not have been provided to Muriel "based on her dietary orders and clinical condition."

Dr. Brown, the pathologist who performed the autopsy on Muriel, provided an expert report on the cause of Muriel's death. According to Dr. Brown, Muriel "died as a result of asphyxia due to choking on food." Dr. Brown also noted that no other immediate causes of death were identifiable through the autopsy or the medical records.

The live pleading filed by the Boggans asserts claims for negligence and wrongful death.[3] Silsbee moved to dismiss the Boggans' direct liability claims for wrongful death and survival and the Boggans' vicarious liability survival claims, claiming that the

---

[3]A negligent hiring claim alleged in the original and first amended petitions was omitted in the Boggans' second and third amended petitions. The third amended petition was the live pleading when the trial court ruled on the motion to dismiss.

reports did not sufficiently address causation as to those claims. When Silsbee filed the present appeal, it did not have the benefit of this Court's recent opinion addressing whether a trial court was required to dismiss some claims when others are supported by adequate expert reports. *See Schrapps v. Pham*, No. 09-12-00080-CV, 2012 WL 4017768 (Tex. App.—Beaumont Sep. 13, 2012, no pet. h.). That case concerned allegations of negligent performance of a surgery and negligent post-operative care against the surgeon, who operated on the patient, and his professional association, who the plaintiffs sought to make vicariously liable. *Id.* at *1. The plaintiffs alleged that the surgeon committed multiple acts of negligence while treating the patient, but their allegations concerned a single group of operative facts that had resulted in the patient's death. *Id.* Under those facts, we concluded that the pleadings alleged a single cause of action. *Id.* at *4. We held the trial court did not abuse its discretion by denying the doctor's motion to dismiss. *Id.* at *5.

The Boggans allege Silsbee "did not provide adequate care, treatments, medications, assistive devices, and sufficient nursing observation and examination of the responses, symptoms and progress in the physical condition of [Muriel]." The facts set forth in the live pleading filed by the Boggans concern negligent acts that were allegedly committed in the course of providing Muriel's diet, culminating in feeding her a doughnut she could not swallow, which led to her death. The Boggans alleged that as a direct result of improper and neglectful treatment, Muriel suffered "severe physical

9

injuries, mental and emotional trauma, extreme humiliation, and loss of dignity and respect during her lifetime." The Boggans also alleged that Muriel died as a direct result of the injuries she suffered due to Silsbee's negligence.

Although the description of Muriel's injuries in the live pleading is somewhat vague, the trial court could reasonably determine from the pleadings that the Boggans complaints asserted a claim for Muriel's suffering and death due to choking on the doughnut, and not claims for unrelated facts that had caused some separate injury.[4] The expert report requirements serve to deter frivolous claims, not to dispose of cases regardless of their merits. *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011). At this preliminary stage of the proceedings, a trial court need only determine whether the reports at issue represent a good-faith effort to comply with the statutory definition of expert reports. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001).

When it denied the motion to dismiss, the trial court impliedly found the reports from Berube and Dr. Brown sufficiently apprised Silsbee of the applicable standards of care for the treatment of Muriel's condition, the manner in which the care provided by Silsbee failed to meet the standard of care, and the causal relationship between that failure and Muriel's injury from choking and death by asphyxiation. *See* Tex. Civ. Prac.

---

[4]This interpretation of the pleadings is consistent with the argument presented by counsel for the plaintiff in the hearing on the motion to dismiss. Counsel stated, "The crux of the case is that the nursing home provided [Muriel] a doughnut when she was supposed to be on a pureed diet only. She choked on the doughnut as a result, asphyxiated and died."

& Rem. Code Ann. § 74.351(r); *Palacios*, 46 S.W.3d at 880. To the extent that Silsbee is liable for the conduct of its employees, a report implicating the conduct of its employees also suffices as a good-faith effort to comply with the TMLA as to Silsbee. *See Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671-72 (Tex. 2008).

As in *Schrapps*, the allegedly negligent care leading up to the choking incident and the fatal accident arose out of the same course of treatment, or a single group of operative facts that resulted in a single injury, Muriel's asphyxiation and resulting death. *See Schrapps*, 2012 WL 4017768 at *2. Because the reports were adequate and are not challenged as being inadequate with respect to the claim that Silsbee negligently fed Muriel a doughnut resulting in her death, the trial court had discretion to allow the other theories concerning the Boggans' wrongful death and survival claims to proceed to discovery. *Id.* at *4. We overrule Silsbee's issue and affirm the trial court's order denying the motion to dismiss.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on September 12, 2012
Opinion Delivered October 25, 2012
Before Gaultney, Kreger, and Horton, JJ.

11