

**NUMBER 13-07–682-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**RODOLFO GUERRERO, M.D.,**                                                          **Appellant,**

**v.**

**ROSARIO RUIZ AND HUSBAND,**
**ROBERTO RUIZ,**                                                          **Appellees.**

---

**On appeal from the 275th District Court of Hidalgo County, Texas.**

---

**MEMORANDUM OPINION**

**Before Justices Yañez, Rodriguez, and Vela**
**Memorandum Opinion by Justice Yañez**

Appellant, Rodolfo Guerrero, M.D., challenges the trial court's denial of his motion
to dismiss a claim filed by appellees, Roberto and Rosario Ruiz ("the Ruizes"), for failure
to provide an expert report that satisfied section 74.351(r)(6) of the Texas Civil Practice
and Remedies Code.[1]  We reverse and remand.

---

[1] Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (Vernon Supp. 2007).

## Background

The Ruizes' original petition, filed on April 13, 2007, provides the following factual summary:

> On the 3rd day of February, 2005, Rosario Ruiz was admitted at Knapp Medical Center, a hospital in Weslaco, Texas, for a surgical procedure to excise a tumor on the posterior triangle on the left side of the neck. Dr. Rodolfo Guerrero performed the surgical procedure on Rosario Ruiz. In performing the surgical procedure, Dr. Rodolfo Guerrero injured Rosario Ruiz' [sic] vocal cords and nerve affecting the left side of the diaphragm. . . . Rosario Ruiz has suffered physical pain and mental anguish as a result of these injuries . . . . Her husband, Roberto Ruiz, has suffered loss of consortium and household services . . . .

On August 29, 2007, Guerrero filed a motion to dismiss appellees' claim pursuant to section 74.351(b) of the civil practice and remedies code.[2] Guerrero argued that the Ruizes' expert report, prepared by Louis F. Silverman, M.D., failed to satisfy section 74.351 in that it failed to (1) set forth the standard of care applicable to appellant; (2) identify how appellant breached the standard of care; and (3) identify and explain any causal link between any alleged breach and appellees' complained-of injuries.

The trial court denied Guerrero's motion to dismiss on October 15, 2007. This interlocutory appeal then ensued.

## Waiver

The Ruizes assert that we lack jurisdiction over Guerrero's appeal. The jurisdictional argument raised by the Ruizes, however, was explicitly rejected by the Texas Supreme Court in *Lewis v. Funderburk*,[3] an opinion issued two months after the Ruizes

---

[2] *Id.* § 74.351(b).

[3] 253 S.W.3d 204, 207-08 (Tex. 2008).

filed their brief. Accordingly, we reject the Ruizes' argument and shall proceed to address the merits of Guerrero's appeal.

## Standard of Review

We review a trial court's ruling regarding the adequacy of an expert report for abuse of discretion.[4] A trial court commits an abuse of discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles.[5] We may not substitute our judgment for that of the trial court when reviewing matters committed to the trial court's discretion.[6]

Under section 74.351 of the Texas Civil Practice and Remedies Code, health care liability claimants must provide an expert report to the defendant no later than 120 days after filing the original petition.[7] A defendant may file a motion challenging the adequacy of the report, and the trial court "shall grant" the motion only if it appears that the report does not represent a good faith effort to comply with the statutory definition of an expert report.[8] In determining whether the report represents a good faith effort, the trial court's inquiry is limited to the four corners of the report, and no inferences may be drawn from information outside the report.[9]

An expert report is defined as a written report by an expert that provides a fair

---

[4] *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001).

[5] *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).

[6] *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992).

[7] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a).

[8] *See id.* § 74.351(a), (l).

[9] *See Palacios*, 46 S.W.3d at 878.

summary of the expert's opinions regarding: (1) the applicable standard of care; (2) the manner in which the care provided failed to meet that standard; and (3) the causal relationship between that failure and the injury, harm, or damages claimed.[10] In compliance with these standards, the expert report must incorporate enough information to fulfill two purposes: (1) the report must inform the defendant of the specific conduct the plaintiff has called into question; and (2) the report must provide a basis for the trial court to conclude the claims are meritorious.[11] A report merely expressing the expert's conclusions about the standard of care, breach, and causation fails to fulfill these purposes.[12] The expert must explain the basis for his statements and must link his conclusions to the facts.[13] However, to avoid dismissal, a plaintiff need not present all the evidence necessary to litigate the merits of her case.[14] The report may be informal in that the information need not fulfill the same requirements as the evidence offered in a summary-judgment proceeding or at trial.[15] Moreover, the expert is not required to express the causal relationship in terms of any "magical" words.[16]

### The Expert Report

The Ruizes' expert report, written by Dr. Silverman, stated, in relevant part, the

---

[10] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *Palacios*, 46 S.W.3d at 878-79.

[11] *Palacios*, 46 S.W.3d at 879.

[12] *Id.*

[13] *Wright*, 79 S.W.3d at 52.

[14] *Palacios*, 46 S.W.3d at 879.

[15] *Id.*

[16] *Wright*, 79 S.W.3d at 53.

4

following:

> I am qualified by education, training, and experience to assess the quality of such surgical procedures as that performed by Dr. Guerro [sic] upon Ms. Ruiz, and to render an expert opinion regarding the quality of such care.
>
> . . . .
>
> When a surgeon performs an operation on the neck, the standard of care mandates that vital structures such as the phrenic nerve which innervates the diaphragm be preserved unless directly involved in a malignant process. Damage to the phrenic nerve causes paralysis of the diaphragm. Ms. Ruiz had a normal preoperative chest x-ray and no hoarseness prior to the left neck surgery performed by Dr. Guerro [sic] on February 13, 2005. These findings were noted following that surgery.
>
> More likely than not, this finding was the results [sic] of damage to the phrenic nerve during Ms. Ruiz's operation. Failure to protect this nerve during neck surgery is clearly below standard. In all reasonable medical probability, Dr. Guerro's [sic] failure to protect Ms. Ruiz's phrenic nerve was the proximate cause of Ms. Ruiz's injury.

**Discussion**

The Ruizes contend that their expert report sets out the standard of care through the following excerpt: "When a surgeon performs an operation on the neck, the standard of care mandates that vital structures such as the phrenic nerve which innervates the diaphragm be preserved unless directly involved in a malignant process." They further contend that breach and causation are established through Dr. Silverman's contention that "[d]amage to the phrenic nerve causes paralysis of the diaphragm," in conjunction with the following statements: "Failure to protect this nerve during neck surgery is clearly below standard. In all reasonable medical probability, Dr. Guerro's [sic] failure to protect Ms. Ruiz's phrenic nerve was the proximate cause of Ms. Ruiz's injury."

We find that the expert report does not sufficiently demonstrate that Guerrero breached the standard of care set out in Dr. Silverman's report. Though the report states

that Guerrero failed "to protect Ms. Ruiz's phrenic nerve," the report also seems to imply that the nerve need not be protected if it is "directly involved in a malignant process." There is nothing in Dr. Silverman's report establishing that the phrenic nerve was not directly involved in a malignant process. And because we are limited to the four corners of the report and inferences may not be drawn from information outside the report,[17] we may not simply assume that it was not directly involved.[18] Accordingly, we find that the Ruizes' expert report is deficient in failing to establish that Guerrero breached the standard of care.

We further find that the Ruizes' expert report does not sufficiently set out the standard of care applicable to Guerrero. In *Palacios*, the Texas Supreme Court observed that identifying the standard of care is critical, stating:

> Whether a defendant breaches his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently. "While a 'fair summary' is something less than a full statement of the applicable standard of care and how it was breached, even a fair summary must set out what care was expected, but not given."[19]

In that case, Palacios was a patient who suffered injuries after falling from his hospital bed; Palacios and his family then brought suit against the hospital, seeking compensation for the injuries Palacios sustained from his fall.[20] The supreme court stated that the statement

---

[17] *See Palacios*, 46 S.W.3d at 878.

[18] *See Hutchinson v. Montemayor*, 144 S.W.3d 614, 618 (Tex. App.–San Antonio, no pet.); *see also Cooper v. Arizpe*, No. 04-07-007334-CV, 2008 Tex. App. LEXIS 2506, at *9-11 (Tex. App.–San Antonio Apr. 9, 2008, pet. filed) (holding that an expert report failed to establish that defendants breached the standard of care because finding that the defendants breached required the court to make an assumption outside the report's four corners).

[19] *Palacios*, 46 S.W.3d at 880 (quoting *Palacios v. Am. Transitional Care Ctrs. of Tex., Inc.*, 4 S.W.3d 857, 865 (Tex. App.–Houston [1st Dist.] 1999) (Taft, J. dissenting)).

[20] *Id.* at 876.

6

the Palacioses relied on in their expert report to establish the standard of care—"that precautions to prevent Palacios' fall were not properly used"—was not a statement of a standard of care, stating: "Neither the trial court nor [the hospital] would be able to determine from this conclusory statement if [the expert] believes that the standard of care required [the hospital] to have monitored Palacios more closely, restrained him more securely, or done something else entirely."[21]  With this statement comes the implicit contention that the Palacioses' expert report could not have adequately established the standard of care through a bare assertion that the standard of care mandated that patients be safeguarded from falling out of bed—for this assertion would not provide any insight as to what exactly the hospital should have done, but failed to do, to uphold the standard of care.  Such a bare assertion is similar to that proffered by the Ruizes' expert report.

The Ruizes' expert report states that Guerrero failed to protect the phrenic nerve, which goes against a standard of care mandating that the nerve be preserved.  It is entirely unclear from the report, however, what specific actions were required by Guerrero to preserve the phrenic nerve (e.g., isolate the phrenic nerve through the use of a medical apparatus, or perhaps simply possess a steadier hand).

### Extension of Time

The parties disagree as to what course of action this Court should take upon finding the Ruizes' expert report deficient.  The Ruizes contend that we should remand their cause to the trial court so it can consider their earlier request for a 30-day extension to cure any

---

[21] *Id.* at 880.

and all deficiencies with their report.[22]  Guerrero contends that this course of action, which this Court has traditionally taken,[23] is wrong.  Subsequent to the filing of Guerrero's appellate brief, however, the Texas Supreme Court held that "section 74.351's plain language permits one thirty-day extension when the court of appeals finds deficient a report that the trial court considered adequate,"[24] thus affirming the propriety of this Court's policy of remanding.  Accordingly, we find that the trial court still has discretion to entertain the Ruizes' request for a 30-day extension to cure deficiencies in their report.

## Conclusion

We reverse the trial court's order denying Guerrero's motion to dismiss and remand for further proceedings consistent with this opinion.[25]

LINDA REYNA YAÑEZ,
Justice

Memorandum Opinion delivered and filed
this the 29th day of August, 2008.

---

[22] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c).

[23] *See generally Miranda v. Martinez*, No. 13-06-386-CV, 2007 Tex. App. LEXIS 1802, at *13-15 (Tex. App.–Corpus Christi Mar. 8, 2007, pet. denied) (mem. op.).

[24] *Leland v. Brandal*, No. 06-1028, 2008 Tex. LEXIS 574, at *8 (Tex. June 13, 2008).

[25] In his brief, Guerrero seeks an award of costs.  Because we are remanding the case to the trial court so that the court may exercise its discretion in determining whether or not to afford the Ruizes a 30-day extension, a determination of entitlement to costs is premature.