Rory LEWIS, M.D., Petitioner,

v.

Dewayne FUNDERBURK, as Next Friend of Whitney Funderburk, Respondent.

No. 06–0518.

Supreme Court of Texas.

Argued Nov. 15, 2007.

Decided April 11, 2008.

---

Andrew F. MacRae, Hull Hendricks & MacRae, LLP, Austin, TX, for Petitioner.

Amy C. Thomas, Law Offices of Amy Thomas, Mexia, TX, for Respondent.

Justice BRISTER delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice WAINWRIGHT, Justice MEDINA, Justice GREEN, Justice JOHNSON and Justice WILLETT joined.

In an effort to stem frivolous suits against health care providers, the Legislature has made a number of changes in the rules of civil litigation. Among them has been a requirement since 1995 for early expert reports,[1] and a provision since 2003 for interlocutory review of those reports.[2] Since adoption of the latter provision, 12 of

1. Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 986 (amended 2003) (current version at TEX. CIV. PRAC. & REM.CODE § 74.351(a)).

2. Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 1.03, 2003 Tex. Gen. Laws 847, 849 (codified as an amendment of TEX. GOV'T CODE § 51.014(a)).

the 14 courts of appeals in Texas have routinely conducted interlocutory review of allegedly inadequate reports.[3] But two courts have not—the Second and (in this case) the Tenth courts of appeals have held they have no jurisdiction of such appeals.[4]

■ We have jurisdiction to determine whether a court of appeals has properly declined jurisdiction.[5] Because we agree with the great majority that interlocutory review is proper, we reverse.

## I. Background

Dewayne Funderburk, as next friend of his daughter Whitney Funderburk, filed this suit claiming Dr. Rory Lewis was negligent in treating Whitney's broken wrist. When Dr. Lewis moved to dismiss the case for failure to serve an expert report, Funderburk pointed to a thank-you-for-your-referral letter in the medical records. The letter said nothing about any standard of care, breach, or causation. Nevertheless, the trial court refused to dismiss, instead granting a 30-day extension during which Funderburk served a report by a local osteopath. Dr. Lewis again moved to dismiss, and the trial court again denied his motion. Dr. Lewis then filed an interlocutory appeal with the Tenth Court of Appeals, which dismissed

3. 1st: *CHCA Mainland L.P. v. Burkhalter*, 227 S.W.3d 221, 226 (Tex.App.-Houston [1st Dist.] 2007, no pet.); *McKowen v. Ragston*, No. 01-06-00665-CV, 2007 WL 79330, at *1 n. 1, —— S.W.3d ——, —— n. 1 (Tex.App.-Houston [1st Dist.] Jan. 11, 2007, no pet.).

3rd: *Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 284-85 (Tex.App.-Austin 2007, no pet.); *see also Acad. of Oriental Med., L.L.C. v. Andra*, 173 S.W.3d 184, 185 (Tex.App.-Austin 2005, no pet.).

4th: *Fox v. Hinderliter*, 222 S.W.3d 154, 156 (Tex.App.-San Antonio 2006, no pet.); *Emeritus Corp. v. Highsmith*, 211 S.W.3d 321, 326 (Tex.App.-San Antonio 2006, pet. denied).

5th: *Romero v. Lieberman*, 232 S.W.3d 385, 388 (Tex.App.-Dallas 2007, no pet.); *Cayton v. Moore*, 224 S.W.3d 440, 443-44 (Tex. App.-Dallas 2007, no pet.); *HealthSouth Corp. v. Searcy*, 228 S.W.3d 907, 908 (Tex. App.-Dallas 2007, no pet.).

6th: *Thoyakulathu v. Brennan*, 192 S.W.3d 849, 851 n. 2 (Tex.App.-Texarkana 2006, no pet.); *Longino v. Crosswhite*, 183 S.W.3d 913, 916-18 (Tex.App.-Texarkana 2006, no pet. h.).

7th: *Wells v. Ashmore*, 202 S.W.3d 465, 467 (Tex.App.-Amarillo 2006, no pet. h.).

8th: *Palafox v. Silvey*, 247 S.W.3d 310, 312 (Tex.App.-El Paso, 2007, no pet. h.); *Sides v. Guevara*, 247 S.W.3d 293, 296-97 (Tex. App.-El Paso Aug.30, 2007, no pet.); *Grindstaff v. Michie*, 242 S.W.3d 536, 539 (Tex. App.-El Paso Aug.30, 2007, no pet. h.).

9th: *Alexander v. Terrell*, No. 09-07-198-CV, 2007 WL 2683536, at *1 (Tex.App.-Beaumont Sept.13, 2007, no pet.); *Hiner v. Gaspard*, No. 09-07-240-CV, 2007 WL 2493471, at *3 (Tex.App.-Beaumont Sept.6, 2007, no pet.).

11th: *Foster v. Zavala*, 214 S.W.3d 106, 117 (Tex.App.-Eastland 2006, pet. filed); *Patel v. Harmon*, 213 S.W.3d 449, 450 (Tex.App.-Eastland 2006, no pet.).

12th: *Spitzer v. Berry*, 247 S.W.3d 747, —— (Tex.App.-Tyler, 2008, no pet. h.).

13th: *Haddad v. Marroquin*, Nos. 13-07-014-CV, 13-07-109-CV, 2007 WL 2429183, at *1 (Tex.App.-Corpus Christi Aug. 29, 2007, pet. filed); *Valley Baptist Med. Ctr. v. Gonzales*, No. 13-06-371-CV, 2007 WL 416536, at *1 (Tex.App.-Corpus Christi Feb.8, 2007, no pet. h.).

14th: *Mem'l Hermann Healthcare Sys. v. Burrell*, 230 S.W.3d 755, 757 (Tex.App.-Houston [14th Dist.] 2007, no pet.).

4. 2nd: *Metwest, Inc. v. Rodriguez*, No. 2-07-047-CV, 2007 WL 1018640, at *1 (Tex.App.-Fort Worth Apr.5, 2007, pet. filed); *Jain v. Stafford*, 214 S.W.3d 94, 97 (Tex.App.-Fort Worth 2006, pet. dism'd).

10th: *Hill Reg'l Hosp. v. Runnels*, No. 10-06-00372-CV, 2007 WL 765291, at *1 (Tex. App.-Waco March 14, 2007, pet. filed); *Lewis v. Funderburk*, 191 S.W.3d 756, 761.

5. *Qwest Commc'ns Corp. v. AT & T Corp.*, 24 S.W.3d 334, 335-36 (Tex.2000) *accord Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 343 (Tex.2004).

for want of jurisdiction, with one justice dissenting.[6]

## II. Interlocutory Review of Inadequate Reports

█ Section 74.351 of the Civil Practices and Remedies Code provides that within 120 days of filing a claimant must serve a curriculum vitae and one or more expert reports regarding every defendant against whom a health care claim is asserted.[7] Section 74.351 has numerous subparts, including:

- subpart (b) requiring trial courts to dismiss a claim with prejudice and award fees if "an expert report has not been served" by the statutory deadline;[8]
- subpart (c) allowing a 30-day extension of the deadline if a report is found inadequate; and
- subpart (*l*) providing that a motion challenging a report's adequacy should be granted only if the report does not represent a good-faith effort to comply with the statute.[9]

Of these and other rulings a trial court might make under section 74.351, the Legislature provided for interlocutory review of just two. First, an immediate appeal can be taken if a trial court *denies* relief sought under subpart (b).[10] Second, an immediate appeal is allowed when a trial court *grants* relief under subpart (*l*).[11] The question here is whether the trial court's order falls under (b) or (*l*)—a jurisdictional question as a denial under (b)

is immediately appealable but a denial under (*l*) is not.

We disagree with the Tenth Court of Appeals that Dr. Lewis's motion, which sought dismissal and attorney's fees, falls under subpart (*l*). Only subpart (b) provides for dismissal and fees. Subpart (*l*) provides for challenges to inadequate reports, but says nothing about dismissal or fees. That is because some challenges—specifically those filed within the first 120 days—*cannot* seek dismissal or fees until the 120-day window has closed. Only when that window has closed and no report has been filed can a defendant move for dismissal and fees under subpart (b).

█ Funderburk argues that because subpart (b) refers to cases in which an expert report "has not been served," it must be limited to cases in which there is no report at all. But in section 74.351(c), the Legislature made clear that when it used the words "an expert report has not been served," it meant to include cases in which an inadequate report *has* been served:

> If an expert report *has not been served* within the period specified by Subsection (a) *because elements of the report are found deficient,* the court may grant one 30-day extension to the claimant in order to cure the deficiency....[12]

When a statute uses a term with a particular meaning, we are bound by the statutory usage.[13] As subpart (c) defines a timely but deficient report as one that "has not

6. 191 S.W.3d at 761.

7. TEX. CIV. PRAC. & REM.CODE § 74.351(a).

8. *Id.* § 74.351(b).

9. *Id.* § 74.351(*l*).

10. *Id.* § 51.014(a)(9).

11. *Id.* § 51.014(a)(10).

12. *Id.* § 74.351(c).

13. TEX. GOV'T CODE § 311.011(b) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."); *Tex. Dep't of Transp. v. Needham,* 82 S.W.3d 314, 318 (Tex.2002).

been served," the same meaning must be given the same phrase in subpart (b).[14]

We do not reach the question addressed in the concurring opinions here because it is not raised. As stated in his reply brief, "[Dr.] Lewis has made it abundantly clear that he is not appealing the trial court's [initial] order (no matter how vehemently he disagrees with it)," but instead is only appealing the order denying his second motion to dismiss.

Accordingly, the court of appeals had jurisdiction to consider the alleged inadequacy of Funderburk's report, and erred in concluding that it did not.

### III. Changing Experts to "Cure Any Deficiency"

■ Rather than remanding to the court of appeals to consider the merits of the osteopath's report, Dr. Lewis asks us to dismiss this case instead. He argues that the 30–day extension in section 74.351(c) allowing a claimant to "cure the deficiency" permits only amendments by the original expert rather than substitutions by a new one. But in section 74.351(i), the statute provides that "a claimant may satisfy *any requirement* of this section ... by serving reports of separate experts." [15] Because the statute allows a claimant to cure a deficiency, and that requirement like all others may be satisfied by serving a report from a separate expert, we agree with Funderburk that the statute does not prohibit him from changing experts midstream.

\* \* \*

Accordingly, we reverse the judgment of the court of appeals and remand the case

to that court to consider the remaining arguments raised by the interlocutory appeal.

Justice O'NEILL filed a concurring opinion.

Justice WILLETT filed a concurring opinion.

Justice O'NEILL, concurring.

As part of House Bill 4's medical tort-reform package, the Legislature amended sections 51.014 and 74.351 of the Texas Civil Practice and Remedies Code to allow for interlocutory appeals of certain orders regarding expert reports in health care liability claims. *See* TEX. CIV. PRAC. & REM. CODE §§ 51.014, 74.351. Section 51.014(a)(9) allows immediate appeal from an order that denies dismissal under section 74.351(b) when "an expert report has not been served within [120 days of filing suit]." *Id.* § 74.351; *see id.* § 51.014(a)(9). Section 51.014(a)(10) allows appeal from an order that *grants* a challenge to an expert report's adequacy under section 74.351(*l*). *See id.* § 51.014(a)(10) (emphasis added). As the court of appeals interpreted these provisions, section 74.351(b) applies only when an expert report is wholly absent within the statutory period and has no effect when an amended report is filed after an extension to cure a deficient report has been granted. 191 S.W.3d 756, 761.

I agree with the Court that whether an expert report is absent within the statutory period, or a deficient report is filed and an opportunity for cure has not yielded an adequate report, the statutory basis for a defendant's motion to dismiss is the same:

---

14. *See Ogletree v. Matthews,* 2007 WL 4216606, —— S.W.3d ——, —— n. 2 (Tex. 2007) (noting that this statute "uses the phrase 'has not been served' to refer both to deficient and absent reports").

15. TEX. CIV. PRAC. & REM.CODE § 74.351(i) (emphasis added).

the plaintiff has failed to serve an expert report as section 74.351(b) requires and, if the trial court denies the motion, the defendant is entitled to interlocutory review. *See* TEX. CIV. PRAC. & REM.CODE § 51.014(a)(9). In my view, however, this conclusion rests on the fact that subsection (b) and subsection (c) of section 74.351 together define unserved reports to include both absent and deficient reports, not on the Court's premise that only subsection (b) provides for the relief (dismissal and fees) that Lewis sought. If an amended report is filed and the trial court denies a meritorious challenge to the report's adequacy, the statutory requirements for an "expert report" have not been met and by subsection (b)'s terms, the effect is as though no report has been served at all. *Id.* §§ 74.351(b), (c), (*l*), 51.014(9).

But while an absent report and a deficient one are treated the same way under section 74.351(b) for purposes of interlocutory appeal, the Legislature has precluded review of the latter when an extension to cure has been granted. *See id.* § 51.014(a)(9) ("an appeal may not be taken from an order granting an extension"). As I read the statutory scheme, when a report, however deficient, has been served, the trial court's actions in denying the dismissal motion and granting an extension are inseparable, and section 51.014(a)(9) bars review of the trial court's order. *See id.; Ogletree v. Matthews*, 2007 WL 4216606, —— S.W.3d ——, —— (Tex. 2007) ("Thus, even when a report is deemed not served because it is deficient, the trial court retains jurisdiction to grant a thirty-day extension, and the Legislature explicitly stated that such orders are not appealable."). In this case, the trial court assessed the Wroton report and stated: "I think it is deficient. I think that if—if

that's intended as your expert report, it's deficient under the rules. I'm going to grant a thirty-day extension...." Because the trial court's denial of Lewis's first motion to dismiss based on the Wroton report was accompanied by an extension to cure, I disagree with the court of appeals' and Justice Willett's conclusion that Lewis could have appealed that order. *See* TEX. CIV. PRAC. & REM.CODE § 51.014(a)(9). The Court declines to reach the question because Lewis "vigorously asserts he is not appealing" the point. —— S.W.3d at ——. But given that we have interpreted the statute to mean that no appeal is allowed when the denial of a motion to dismiss a deficient report is accompanied by an extension to cure, and that Lewis has expressly reserved the issue, I would note the court of appeals' error. *See Ogletree*, —— S.W.3d at ——.

In sum, I agree with the Court that a separate expert may cure a defective report in whole or in part, and that the court of appeals had jurisdiction to consider the adequacy of Funderburk's amended report; to this extent I join the Court's opinion. However, I write separately to clarify what I believe to be the proper basis for jurisdiction and to note the court of appeals' error in concluding that Lewis could have appealed the trial court's initial ruling.

Justice WILLETT, concurring.

My recent concurrence in *Ogletree v. Matthews* described what I hoped would be a "rare bird in Texas legal practice": a "grossly substandard filing pitched as a bona fide report" under Section 74.351.[1] Today's case presents the Court with an actual sighting of this rare bird, a species that in my view merits extinction, not conservation. Extensions forgive deficient re-

1. 253 S.W.3d 204 (Tex.2007) (Willett, J., con- curring).

ports, not absent ones. If a report is missed, not just amiss, courts are remiss if they do not dismiss.

I agree with the Court that (1) the court of appeals had jurisdiction to hear Dr. Lewis's appeal and (2) a plaintiff may cure a deficient report by one expert with a substituted report by another expert. I write separately only to emphasize this point: because Funderburk's initial "report" was literally no report at all—an irrefutable fact—I believe Dr. Lewis was free to appeal immediately the trial court's first order denying his motion to dismiss, even though that order simultaneously granted a thirty-day extension.

The statutory rules for filing a health care liability claim are straightforward:

- A claimant must submit an expert report within 120 days of filing suit.[2]

- The report must summarize the expert's opinion concerning three mandatory elements: standard of care, breach of duty, and causation.[3]

- Failure to submit the expert report within the 120–day deadline warrants dismissal,[4] and a trial court's refusal to dismiss can be appealed immediately.[5]

- If a plaintiff files a timely-but-deficient report, a trial court may grant one thirty-day extension "in order to cure the deficiency,"[6] and this deci-

sion is not reviewable by interlocutory appeal.[7]

A wholly absent report is incurable and cannot be deemed a deficient report eligible for a thirty-day extension. In *Ogletree*, we observed that Chapter 74 by its terms draws a sharp distinction between deficient reports and absent ones; trial courts have discretion regarding the former (extension is permissible) and none regarding the latter (dismissal is mandatory).[8] Accordingly, we held that the trial court in *Ogletree* acted within its discretion in letting the plaintiff cure a report that, although it covered the statutory elements, was deemed deficient because it was prepared by the wrong kind of medical professional.[9]

As Justice O'Neill emphasizes, we also held in *Ogletree* that the simultaneous grant of an extension to cure a timely-but-deficient report and denial of a motion to dismiss was not subject to interlocutory appeal.[10] But in that same case, we expressly reserved for another day the question of whether interlocutory appeals of joint "dismissal-no/extension-yes" orders may proceed "when there is an absence of a report, rather than a report that implicated a provider's conduct but was somehow deficient."[11] Today is not the day for resolution of this important question, but it could have been, had Dr. Lewis timely appealed the trial court's ruling on Funderburk's first expert report, which implicates no provider's conduct.[12]

---

2. Tex. Civ. Prac. & Rem.Code § 74.351(a).

3. § 74.351(r)(6).

4. § 74.351(b)(2).

5. § 51.014(a)(9).

6. § 74.351(c).

7. § 51.014(a)(9).

8. *Ogletree v. Matthews*, —— S.W.3d at —— (Tex.2007).

9. *Id.*

10. *Id.*

11. *Id.* at —— n. 2.

12. I understand fully a defense counsel's reluctance to bring such an interlocutory appeal, notice of which would be due before the thirty-day extension even expires and which carries, not incidentally, the risk of annoying the trial court. Defense counsel's reluctance to appeal a nondismissal order is particularly

Unlike the report at issue in *Ogletree*, which addressed the required elements that make a report a report, the document that Funderburk designated as his report—a February 2002 "thank-you-for-your-referral letter" [13]—bears no resemblance to Chapter 74's definition of an expert report. This doctor-signed letter is no more a report than a doctor-signed prescription or Christmas card would be. The explanation for this conclusion is impossible to miss: *this letter was written more than eighteen months before Chapter 74 and its expert report requirement became effective* (and a full twenty-two months before suit was filed). When Dr. Wroten composed this letter in early 2002, he doubtless never dreamed it might one day be held up as an expert report in a not-yet-filed lawsuit governed by a not-yet-enacted law.

The letter conveys gratitude for a patient referral and briefly summarizes the patient's condition, but it covers none of the statutory elements that the Legislature mandated in Chapter 74; indeed, it never once "accuse[s] anyone of doing anything wrong." [14] As I wrote in *Ogletree*, "any claimant passing off such material as an expert report, and any court treating it as such, evinces a complete disregard for Chapter 74's unambiguous statutory criteria." [15] When compared with the standards for expert reports set by the Legis-

lature, this letter is "so utterly lacking that, no matter how charitably viewed, it simply cannot be deemed an 'expert report' at all, even a deficient one." [16] Essentially, the trial court judicially amended the statutory expert-report deadline, stretching it from 120 days to 312 days (when the first, and only, actual expert report was filed). This order is plainly impermissible.

Funderburk's own trial court pleadings make it abundantly clear that he himself never equated the Wroten referral letter with a bona fide expert report. On September 30, 2004–163 days after the 120–day expert report deadline expired (and 951 days after the referral letter was written)—Funderburk's Motion for 30–Day Extension acknowledged as much, indicating that he did not have the required report and stating an extension would enable him "to obtain" one. Another telling point: Funderburk *never* provided Wroten's curriculum vitae as required by Section 74.351(a)—even after the 120–day deadline had expired—yet another indication that Funderburk himself never viewed the letter as an expert report.[17]

This Court made clear in *Ogletree* that nonexistence is not a curable defect: "the Legislature denied trial courts the discretion to ... grant extensions" when no

---

understandable when a trial court, as here, assures defense counsel that it will reconsider the original motion to dismiss once plaintiff serves the spruced-up report, but such tensions are inherent in interlocutory appeals and their attendant deadlines.

13. —— S.W.3d at —— (majority opinion). This letter is reproduced in its entirety in Chief Justice Gray's dissent below. *See* 191 S.W.3d 756, 762–63.

14. *Ogletree*, —— S.W.3d at —— (Willett, J., concurring).

15. *Id.* at ——.

16. *Id.* at ——.

17. Chapter 74 requires more than a timely expert report that satisfies the statutory elements; it also requires the expert's curriculum vitae. Tex. Civ. Prac. & Rem.Code § 74.351(a). And even if disbelief is suspended and the Wroten letter is deemed a timely expert report, the record proves that the required curriculum vitae was not timely provided, or *ever* provided for that matter.

report has been served.[18] In this case, because the Wroten letter "totally omits the required statutory elements and makes no colorable attempt to demonstrate liability," dismissal was mandatory.[19]

Nevertheless, the trial court denied Dr. Lewis's motion to dismiss and instead granted Funderburk a thirty-day extension, remarking at the hearing:

> I'm not convinced without any case law to the contrary that no report isn't considered a deficient report and so I'm not sure, even if it's no report, that she's not entitled to have an extension and I'm going to grant thirty days to file the report and then I will reconsider your motion to dismiss.

We should hasten to provide such precedent, but unfortunately the issue is not squarely presented today. While Dr. Lewis had the statutory right (at least in my view) to immediately appeal the first order denying his motion to dismiss, he failed to do so within the prescribed twenty days.[20] As a result, Dr. Lewis has waived his "no report" argument, thus foreclosing a merits-based challenge to the Wroten letter at this interlocutory stage.

Accordingly, I concur with the Court's judgment and look forward to the case that provides the Court a clean opportunity to resolve the question reserved in *Ogletree*.

---

18. *Ogletree*, —— S.W.3d at —— (majority opinion).

19. *Id.* at 209 (Willett, J., concurring).

20. *See* Tex.R.App. P. 26.1(b) (establishing a 20–day deadline for filing an interlocutory appeal).