

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-357-CV

TYLER SCORESBY, M.D. AND
YADRANKO DUCIC, M.D.

APPELLANTS

V.

CATARINO SANTILLAN,
INDIVIDUALLY AND AS
NEXT FRIEND OF SAMUEL
SANTILLAN, A MINOR

APPELLEE

----------

### FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

### I. INTRODUCTION

In these accelerated, interlocutory appeals, Appellants Tyler Scoresby,

M.D. and Yadranko Ducic, M.D. (collectively, "Appellants") appeal the trial

court's order denying their motions to dismiss the health care liability claims of

Appellee Catarino Santillan, individually and as next friend of Samuel Santillan,

a minor. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(9) (Vernon 2008). In three issues, Dr. Scoresby argues that the trial court had no discretion but to dismiss Santillan's health care liability claims because Santillan's tendered civil practice and remedies code section 74.351(a) expert report is so woefully deficient as to constitute "no report" and because Santillan did not serve a curriculum vitae of the expert who authored the report before the 120-day statutory deadline had expired. *See id*. § 74.351(a), (b) (Vernon Supp. 2008). Dr. Ducic raises the same arguments in three issues, additionally specifically contending that the trial court abused its discretion by granting Santillan a section 74.351(c) thirty-day extension. We dismiss both appeals for want of jurisdiction.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Santillan filed his original petition on January 17, 2008, alleging health care liability claims against Dr. Scoresby and Dr. Ducic.[1] Santillan alleged that Samuel was admitted to JPS under the care of Dr. Scoresby and Dr. Ducic and with a preoperative diagnosis of maxillary sinus neoplasm. On January 17, 2006, Samuel underwent a "left mediomaxillectomy, excision of neoplasm of the maxilla, calvarial bone growth and reconstruction of the maxilla and excision

---

[1] Santillan also sued Tarrant County Hospital District, a/k/a JPS Health Network, d/b/a John Peter Smith ("JPS").

2

of a tumor of pterygopalatin structures." During the procedure, "an incision was made in the right parietal region in a coronal fashion and carried down the pericranium." According to Santillan, as a result of the surgery, Samuel suffered a "cortical laceration with active bleeding from several medium-sized vessels in the area," which resulted in "right hemiparesis and significant brain damage."

Santillan timely served Appellants with the purported expert report of Charles D. Marable, M.D. The report is dated August 3, 2007. Santillan did not serve Appellants with Dr. Marable's curriculum vitae within 120 days of the date that Santillan filed the original petition. Both Dr. Scoresby and Dr. Ducic filed objections to the report and moved to dismiss Santillan's health care liability claims, contending, among other things, that Dr. Marable's report was, in effect, "no report" at all.

On July 17, 2008, the date scheduled for the hearing on the motions to dismiss, Santillan filed and served Dr. Marable's "Amended Medical Report and curriculum" vitae. At the hearing on the motions to dismiss, the trial court confirmed that the only document that was before it and relevant to its ruling was Dr. Marable's August 3, 2007 report, which was the only report served

before the expiration of 120 days from January 17, 2008.[2]  The trial court denied both Dr. Scoresby's and Dr. Ducic's motions to dismiss and granted Santillan a thirty-day extension "to cure any deficiencies in his expert report."[3]  These appeals followed.

### III.  "NO REPORT v. DEFICIENT REPORT"

Dr. Scoresby in his first and second issues and Dr. Ducic in his first issue argue that Dr. Marable's timely served report is so woefully deficient and lacking in containing the elements necessary to constitute a civil practice and remedies code section 74.351(r)(6) expert report that the report is no report at all.  Building on their argument that Dr. Marable's report is actually no report, Appellants contend that Santillan accordingly failed to provide a statutory-compliant expert report within 120 days of filing suit.  Hence, the trial court was prohibited from granting Santillan a thirty-day extension to cure any deficiencies in the report, and the trial court had no discretion but to dismiss Santillan's health care liability claims.  Thus, Appellants both raise a "no report v. deficient report"[4] issue.  Appellants ask us to adopt the line of reasoning that

---

[2] The trial court thus did not consider Dr. Marable's amended report and curriculum vitae.

[3] The trial court granted JPS's motion to dismiss.

[4] *See In re Watkins*, No. 06-0653, 2009 WL 153251, at *3 (Tex. Jan. 23, 2009) (orig. proceeding) (Willett, J., concurring).

4

a report, though timely served, may nonetheless be so deficient in meeting statutory requirements that the filing is no report at all. Appellants additionally each contend that Dr. Marable's report is no report because Santillan failed to serve Appellants with Dr. Marable's curriculum vitae within 120 days of the date that Santillan filed suit and that the trial court had no discretion but to dismiss the case for that reason.

Civil practice and remedies code section 74.351 provides that, within 120 days of filing suit, a plaintiff must serve expert reports for each physician or health care provider against whom a liability claim is asserted. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). An expert report is a written report by an expert that provides a fair summary of the expert's opinions regarding the applicable standard of care, the manner in which the care rendered by the physician or health care provider failed to meet the standard, and the causal relationship between that failure and the injury, harm, or damages claimed. *Id*. § 74.351(r)(6); *see also Watkins*, 2009 WL 153251, at *2 (Johnson, J., concurring) (reasoning that section 74.351(r)(6) requires that for a document to qualify as a statutory expert report, it must demonstrate (1) someone with relevant expertise (2) has an opinion (3) that the defendant was professionally negligent and thereby harmed the plaintiff). Although a report need not marshal all of a claimant's proof, it must include the expert's opinion on each of the

5

elements identified in section 74.351. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). If an expert report has not been served within the 120-day period, the court, on the motion of the affected physician or health care provider, shall—subject to an extension of time for a deficient report—enter an order that (1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider and (2) dismisses with prejudice the claim with respect to the physician or health care provider. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b), (c); *Badiga v. Lopez*, 274 S.W.3d 681, 683 (Tex. 2009). Section 74.351(b) makes clear that dismissal is mandatory and extensions are prohibited if no report—as opposed to a merely deficient report—is served within the 120-day deadline imposed by section 74.351(a). Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b); *Ogletree v. Matthews*, 262 S.W.3d 316, 319–20 (Tex. 2007). If a timely served document intended by a claimant to be an expert report is determined by the trial court to be deficient in complying with statutory requirements, the trial court may grant one thirty-day extension to the claimant in order to cure the deficiency. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c).

At the time of this writing, the Supreme Court of Texas has not had an opportunity to squarely address this "recurring and elusive" "no report

6

v. deficient report" issue. *See Watkins*, 2009 WL 153251, at *3 (Willett, J., concurring). The issue has only been addressed by a few members of the supreme court in concurring opinions. In his concurring opinion in *Ogletree*, Justice Willett observed that the court had apparently "limit[ed] the universe of possible reports" to (1) absent reports, which have not been filed at all and require dismissal of the case, and (2) deficient reports, which have been timely filed and may receive an extension. *Ogletree*, 262 S.W.3d at 323 (Willett, J., concurring). He explained that the court's classification "of all purported expert reports as either absent or deficient may prove inapposite in rare cases—where the claimed 'report' is actually no such thing—and inadvertently expand the availability of the thirty-day extension provided by section 74.351(c) beyond what the Legislature intended." *Id*. at 322. In his view, there exists a third category of possible reports: "a document so utterly lacking that, no matter how charitably viewed, it simply cannot be deemed an 'expert report' at all, even a deficient one." *Id*. at 323. A trial court reviewing such a "report" should determine that a report "has not been served" for purposes of section 74.351(b) and dismiss the claim. *Id*. at 324.

Referencing the third category of possible reports discussed in *Ogletree*, Justice Willett explained in his concurring opinion in *Lewis v. Funderburk* that the case presented the court "with an actual sighting of this rare bird." 253

S.W.3d 204, 209 (Tex. 2008) (Willett, J., concurring).  He opined that

Funderburk's initial "report"—a "thank-you-for-your-referral letter"—was no

report at all. *Id*. at 210–11.  The defendant, however, did not timely appeal the

"no report issue." *Id*. at 208, 210 ("Today is not the day for resolution of this

important question, but it could have been, had Dr. Lewis timely appealed the

trial court's ruling on Funderburk's first expert report, which implicates no

provider's conduct.").

The supreme court did not resolve the "no report v. deficient report" issue

in *Watkins*.[5]  Justice Johnson filed a concurring opinion joining the court's

judgment in denying mandamus relief but additionally reasoning in part as

follows:

> The document referred to in this case as an expert report is not a
> *deficient* statutory expert report; it is not a statutory expert report

---

[5] Dr. Watkins challenged the purported expert report served by the plaintiff, but the trial court granted a thirty-day extension. *Watkins*, 2009 WL 153251, at *1.  Dr. Watkins filed an interlocutory appeal and an original proceeding in the court of appeals asserting that the trial court abused its discretion by granting an extension. *Id*.  The court of appeals dismissed the interlocutory appeal for want of jurisdiction and denied mandamus relief. *Id*. Dr. Watkins sought review of only the mandamus denial. *Id*.  The court reasoned that "[t]he separate writings join issue again today on the question whether the item served was a deficient report or no report at all."  *Id*. However, it did not matter; "[i]f no report was served, interlocutory appeal was available, so mandamus is unnecessary.  If the report was merely deficient, then an interlocutory appeal was prohibited, and granting mandamus to review it would subvert the Legislature's limit on such review." *Id*.

*at all*.  While the document is authored by a physician, it does not show that as of the date of the report the author held any opinion as to (1) applicable standards of care for the treatment in question, (2) the manner in which care rendered by the defendant physician failed to meet the standards, or (3) the causal relationship between that failure and the harm claimed.

*Watkins*, 2009 WL 153251, at *2 (Johnson, J., concurring).

Justice Willett filed a concurring opinion agreeing that Dr. Watkins was not entitled to mandamus relief.  *Id*. at *3–6.  He also agreed with Justice Johnson that the report was not a statutory expert report at all, succinctly stating the specific issue as follows:  "whether a narrative that fails to include any expert opinion on the standard of care, breach, or causation is merely deficient and thus eligible for an unreviewable extension or tantamount to no report at all and thus ineligible for *any* extension."  *Id*. at *5.

Appellants direct us to several opinions from our sister courts determining that a timely served document purporting to be an expert report was not a statutory-compliant expert report.  *See, e.g., Bogar v. Esparza*, 257 S.W.3d 354, 364–69, 373 (Tex. App.—Austin 2008, no pet.) (concluding that the purported expert report at issue was no report as to appellant because it failed to identify appellant, failed to describe the applicable standard of care, failed to describe how appellant may have breached the standard of care, and, consequently, failed to implicate any person's conduct); *Rivenes v. Holden*, 257

9

S.W.3d 332, 338–39 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (determining that a timely served document purporting to be an expert report did not implicate appellant's conduct and was not a statutory-compliant expert report as to appellant because it offered no opinions concerning appellant's conduct, it failed to discuss how the care rendered by appellant failed to meet the applicable standard of care, and it failed to set forth how appellant's failure to meet the standard of care caused plaintiff to suffer injury, harm, or damages); *Apodaca v. Russo*, 228 S.W.3d 252, 255–58 (Tex. App.—Austin 2007, no pet.) (holding that timely served expert report was no report as to appellee because it failed to mention appellee and it failed to discuss how the care rendered by appellee did not meet the applicable standard of care or how appellee's failure caused the patient to suffer injury, harm, or damages). Unlike these cases, some of our other sister courts have rejected arguments that an expert report was so deficient that it was no report at all. *See*, *e.g.*, *Tenet Hosp., Ltd. v. Gomez,* 276 S.W.3d 9, 12–13 (Tex. App.—El Paso 2008, no pet.); *Cook v. Spears*, 275 S.W.3d 577, 580–82 (Tex. App.—Dallas 2008, no pet.).

We do not resolve this issue in favor of Appellants because *Ogletree*—the latest opinion by the supreme court that is relevant to the specific issue here—forecloses their arguments. In *Ogletree*, the plaintiffs asserted health

10

care liability claims against Dr. Ogletree and Heart Hospital of Austin. 262 S.W.3d at 317. The plaintiffs timely filed expert reports from a radiologist and three nurses. *Id*. Dr. Ogletree timely objected to the reports and moved to dismiss the case. *Id*. at 318. The trial court denied his motion and granted the plaintiffs a thirty-day extension to cure deficiencies, and the court of appeals held that it lacked jurisdiction over his appeal because the trial court's denial of his motion to dismiss was coupled with the grant of an extension to cure the deficient reports. *Id*.

Similar to the arguments that Appellants make in this case, Dr. Ogletree argued before the supreme court that "as a radiologist, Dr. Karsh may not opine on a urologist's standard of care and, therefore, *no report was served that met the statutory definition of an 'expert report.'*" *Id*. at 319 (emphasis added). Just like Appellants in this case, Dr. Ogletree contended that because no report was served, the trial court had no discretion to grant a thirty-day extension, and the denial of his motion to dismiss was appealable. *Id*. The supreme court disagreed, stating, "That is not how the Legislature drafted the statute . . . ." *Id*. Interpreting section 74.351, the court noted that "the Legislature recognized that not all initial timely served reports would satisfy each of the statutory criteria" and that, "[a]s a result, the amendments explicitly give the trial courts discretion to grant a thirty day extension so that parties may, where

11

possible, cure deficient reports." *Id*. at 320. Thus, "a *deficient report* differs from an *absent report*." *Id*. (emphasis added).

It is well established that as an intermediate appellate court, we are bound by the pronouncements of the supreme court. *City of Mission v. Cantu*, 89 S.W.3d 795, 809 n.21 (Tex. App.—Corpus Christi 2002, no pet.); *Diggs v. Bales*, 667 S.W.2d 916, 918 (Tex. App.—Dallas 1984, writ ref'd n.r.e.). It is not the function of the court of appeals to abrogate or modify established precedent; that function lies solely with the supreme court. *Lubbock County, Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002).

Whether or not the court in *Ogletree* intended to "limit[] the universe of possible reports" to absent reports and deficient reports, that is the limitation that we reasonably construe from the opinion's analysis.[6] At present, neither *Ogletree* nor any other supreme court opinion holds that a timely served expert report containing a narrative that fails to include any expert opinion on the standard of care, breach, or causation is tantamount to no report at all and thus ineligible for any section 74.351(c) extension. Until a majority of the supreme court so holds, such a determination by this court would necessarily constitute

---

[6] Indeed, Justice Willett seemed to conclude similarly according to the portion of his concurring opinion in which he recognized "the Court's classification of all purported expert reports as either absent or deficient." *Ogletree*, 262 S.W.3d at 322, (Willett, J., concurring).

a modification to *Ogletree's* absent or deficient expert report limitation, which would be improper because we are bound as an intermediate appellate court by supreme court precedent.

In *Badiga*, the supreme court held that when an expert report has not been timely served, but a trial court denies a motion to dismiss and grants an extension to cure, an interlocutory appeal is available to challenge the denial of a motion to dismiss. *Badiga*, 274 S.W.3d at 684–85; *see also Watkins*, 2009 WL 153251, at *1 (citing *Badiga* and stating, "If no report was served, interlocutory appeal was available."). Appellants argued in presubmission briefs that we have jurisdiction over their appeals because Dr. Marable's report is no report at all. However, in light of binding precedent, we have not recognized that a third category of expert reports exists in which a timely served expert report (such as the one in this case) is, in effect, no report at all.[7] Morever, it is undisputed that Santillan timely served Appellants with Dr. Marable's report. Thus, this is not an absent report case. Consequently, this is not a "*Badiga* case" in which we may entertain an interlocutory appeal from the trial court's denial of a motion to dismiss because no report has been served.

---

[7] In *Maris v. Hendricks*, we did not adopt Justice Willett's reasoning that a third category of expert reports exists; we merely stated in a footnote that we were "mindful of Justice Willett's concurring opinion in *Ogletree*." 262 S.W.3d 379, 385 n.5 (Tex. App.—Fort Worth 2008, pet. denied).

13

When a report has been served and the trial court both denies a motion to dismiss and grants an extension of time, the trial court's rulings are inseparable. *Ogletree*, 262 S.W.3d at 321. If a deficient report is served and the trial court grants a thirty-day extension, that decision—even if coupled with the denial of a motion to dismiss—is not subject to appellate review. *Id*.

Here, the trial court denied Appellants' motions to dismiss, it granted Santillan a thirty-day extension to cure any deficiencies in the report, and it considered Santillan's failure to serve a curriculum vitae as a deficiency in the report. *Ogletree* dictates that we do not have jurisdiction over these appeals.[8] *See Ogletree*, 262 S.W.3d at 321.

### IV. CONCLUSION

Having determined that we do not have jurisdiction over Dr. Scoresby's appeal and that we do not have jurisdiction over Dr. Ducic's appeal, we dismiss Dr. Scoresby's appeal for want of jurisdiction and we dismiss Dr. Ducic's appeal for want of jurisdiction. *See* Tex. R. App. P. 43.2(f).

BILL MEIER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MEIER, JJ.

DELIVERED: April 30, 2009

---

[8] We withdraw our September 23, 2008 letter in which we preliminarily determined that "this court has jurisdiction over [A]ppellants' appeals."

14