NUMBER 13-10-00468-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI – EDINBURG

                                                                                                                             

 

JORGE DE LA GARZA, M.D.,                                                       Appellant,                                                          

 

v.

 

GARY E. SCHRUZ,                                                                      Appellee.


                                                                                                                             

 

On appeal from the 275th
District Court

of Hidalgo County, Texas.

                                                                                                                             

 

MEMORANDUM OPINION

 

Before Justices
Garza, Benavides, and Vela

Memorandum Opinion by
Justice Garza

 

            When a medical malpractice
plaintiff files an expert report that absolves the defendant doctor of any
liability, is it even a “report” at all?  That is the question posed in the
instant appeal, in which appellant Jorge De La Garza, M.D., argues that the trial
court should have dismissed the claims brought against him by appellee Gary E.
Schruz.  We dismiss the appeal for want of jurisdiction.

I. 
Background

            On October 30, 2009,
Schruz sued Dr. De La Garza and Doctors Hospital at Renaissance (“Doctors
Hospital”),[1]
alleging medical negligence in connection with the care and treatment provided
to Schruz during and after undergoing heart surgery.  On February 26, 2010, one
day prior to the statutory deadline, Schruz filed a purported medical expert
report pursuant to chapter 74 of the civil practice and remedies code.  See
Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(a) (West 2011).  The report, authored by Mitchell Brooks, M.D.,
consists of an initial three-page analysis of Schruz’s case as well as a
two-page “Addendum,” also dated and served on February 26, 2010.  The initial
analysis states in part:

The clinical records currently
available for review essentially document the admission and treatment of
[Schruz] for ischemic heart disease that resulted in the performance of a
coronary artery bypass graft x4. . . .  Jorge De La Garza, M.D. performed the
aforementioned surgery on November 19, 2007.  The patient was transferred to
the intensive care unit that same day at approximately 12:15 PM.  What appears
to be at issue in this case is whether or not a standard of care was violated
with respect to the development and subsequent treatment of a decubitus ulcer. 
Based on my review and analysis of the clinical records it would appear that
such a standard of care was violated on the part of the attending surgeon,
Jorge De La Garza, M.D. in that he failed to address the issue of the stasis
ulcer in a timely manner, such that further breakdown resulted in a surgical
debridement and additional care to the ulcer site.

 

. . . .

 

At this point in time I am unable to
identify any documentation that indicates that Dr. De La Garza took any action
with respect to actively treating the decubitus ulcer until November 26, 2007. 
This delay[,] in my opinion[,] probably resulted in the surgical treatment of
the decubitus ulcer that subsequently occurred as a result of the failure to
address the issue in a timelier manner.

 

. . . .

 

There is additional information that
has currently been made available to me and I am present[ly] aware of, the
content of which is not included in this report.  This information includes
progress notes from multiple physicians during that time frame between November
20, 2007 and November 26, 2007.  If I am able to ascertain whether or not Dr.
De La Garza addressed the issue of the pressure ulcer then the clinical picture
and treatment will become clearer.  If the records indicate that the attending
physician initiated no treatment then the opinion expressed herein will hold. .
. .

 

The “Addendum,” which directly follows
the initial analysis and forms pages four and five of Dr. Brooks’s report,
states in part:

I have now had the opportunity to
review additional documents with respect to the above referenced case.  These
include the “Physician’s Order Sheets” during the dates of stay at the
[hospital] as well as the Daily Progress Notes that were created by the large
number of physicians attending this patient.

 

It would appear that a triple
antibiotic ointment or cream was ordered on November 22, 2007 to be applied
twice daily to the lesion. . . .  Furthermore, a skin care consultation was
ordered on November 24, 2007 and after a review of the wound care consult dated
November 26, 2007, it would appear that the patient had an air mattress prior
to that date to address the possibility of a sacral decubitus ulcer and
furthermore, the record also indicates that there were numerous diaper changes
started on or about November 25, 2007, presumably to make sure the skin in the
perineal area would not become moist.  Whoever performed the wound care consult
(I am unable to read the signature) further indicated the need to change the
patient’s mattress.  In summation then, it would appear that the physician
component of the care was in all probability not unreasonable with respect to
its timing and the actual treatment rendered. . . .

 

Dr. Brooks goes on to state that it
“appear[s] that there may very well have been some significant nursing
procedures that were violated with respect to communication and the obtaining
of a wound care consultation. . . .”  Nevertheless, according to Dr. Brooks,
“[f]rom the physician perspective, it would thus appear at this point in time
that the sequence of events and the apparent treatment does not appear to be
unreasonable or outside the standard of care of the community in which the
patient was treated.”

On March 12, 2010, Dr. De La Garza
moved to dismiss the suit on grounds that Dr. Brooks’s report was insufficient. 
Dr. De La Garza further contended that the report did not actually constitute a
“report” under the statutory definition, and that Schruz was therefore not
entitled to any extension of time to file an amended report.  See id.
§ 74.351(b), (c).  Schruz
responded by claiming that the report was sufficient or, in the alternative,
that the trial court should grant an extension of time to cure any deficiency
in the report.  After a hearing, the trial court determined on August 3, 2010
that the report was “deficient”—rather than “no report”—and granted Schruz’s
request for a thirty-day extension of time to file a sufficient report.  This interlocutory
appeal followed.  See id. § 51.014(a)(9) (West 2008) (permitting
appeal of interlocutory order denying all or part of a motion to dismiss for
failure to serve an expert report in a health care liability claim); Badiga v. Lopez, 274 S.W.3d 681, 685
(Tex. 2009) (“A provider may pursue an interlocutory appeal of the denial of a
motion to dismiss when no expert report has been timely served, whether
or not the trial court grants an extension of time.” (Emphasis added.)); cf.
Ogletree v. Matthews, 262 S.W.3d 316, 321 (Tex. 2007) (holding that, if a deficient report is served and the
trial court grants a thirty-day extension, that decision, even if coupled with
a denial of a motion to dismiss, is not subject to interlocutory appeal).

II. 
Discussion

A.        Standard of
Review

            We review a trial
court’s order denying a motion to dismiss for failure to comply with the expert
report requirement under an abuse of discretion standard.  NCED Mental
Health, Inc. v. Kidd, 214 S.W.3d 28, 32 (Tex. App.–El Paso 2006, no pet.)
(applying abuse of discretion standard to trial court’s denial of motion to
dismiss); Kendrick v. Garcia, 171 S.W.3d 698, 702 (Tex. App.–Eastland
2005, pet. denied) (same); see Am. Transitional Care Ctrs. of Tex., Inc. v.
Palacios, 46 S.W.3d 873, 878 (Tex. 2001) (applying abuse of discretion
standard to trial court’s granting of motion to dismiss).  A trial court abuses
its discretion if it acts in an arbitrary or unreasonable manner or without
reference to any guiding rules or principles.  Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  However, a trial
court has no discretion in determining what the law is or in applying the law
to the facts.  Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992); Baylor
Univ. Med. Ctr. v. Biggs, 237 S.W.3d 909, 916 (Tex. App.–Dallas 2007, pet.
denied).

B.        Applicable
Law

            Under
chapter 74, a plaintiff asserting a health care liability claim must serve a
medical expert report upon each party's attorney no later than the 120th day
after the date the original petition was filed.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).  The report
must

provide[] a fair summary of the expert’s
opinions as of the date of the report regarding applicable standards of care,
the manner in which the care rendered by the physician or health care provider
failed to meet the standards, and the causal relationship between that failure
and the injury, harm, or damages claimed.

 

Id. § 74.351(r)(6). 
Although a report need not marshal all of a claimant’s proof, it must include
the expert’s opinion on each of the elements identified in section 74.351.  Palacios,
46 S.W.3d at 878.

When a defendant
files a motion challenging the adequacy of a report, the trial court will grant
the motion only if, after a hearing, it appears that the report does not
represent an “objective good faith effort to comply with the definition of an
expert report in Subsection (r)(6).”  Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(l).  To constitute a “good
faith effort,” the report must provide enough information to (1) inform the
defendant of the specific conduct the plaintiff has called into question, and
(2) provide a basis for the trial court to conclude that the claims have merit.
 Bowie Mem’l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002); see
Palacios, 46 S.W.3d at 879.

If an expert report
has been served within the 120-day period but elements of the report are found
deficient, the court may grant one thirty-day extension to the claimant in
order to cure the deficiency.  Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(c).  On the other hand, if no expert
report at all is filed within the 120-day period, no extension is permitted,
and the trial court must dismiss the claim against the defendant and award
reasonable attorney’s fees.  Id.  § 74.351(b).

C.        Analysis

            In the
“Addendum” attached to his report, Dr. Brooks stated that “the physician component of the care
[given to Schruz] was in all probability not unreasonable” and that “[f]rom the
physician perspective, . . . the apparent treatment does not appear to be
unreasonable or outside the standard of care of the community in which the
patient was treated.”  Neither party disputes that these statements render the
report insufficient to satisfy the requirements of the expert report statute,
in part because the report did not “provide a basis for the trial court to conclude
that the claims [against Dr. De La Garza] have merit.”  Bowie Mem’l
Hosp., 79 S.W.3d at 52.  The sole question for this Court, then, is whether
Dr. Brooks’s report was so insufficient as to constitute no report—in other
words, an “absent report”—such that Schruz would not be entitled to a
thirty-day extension of time to cure any deficiencies.

            The Texas
Supreme Court has not yet squarely addressed this issue.  However, several
recent cases presented similar fact patterns.  In Ogletree v. Matthews,
the defendant urologist argued that the plaintiff’s expert reports were so
deficient as to be “nonexistent” because they were authored by nurses and a
radiologist.  262 S.W.3d 316, 318 (Tex. 2007).  The Court noted that a
“deficient” report differs from an “absent” report in one “important respect”: 
when the former is served by a health care liability plaintiff, the trial court
retains its discretion to grant a thirty-day extension to cure the report;
whereas when the latter is served, no extension is permitted.  Id.  In
that case, the Court concluded that the expert reports were “deficient,” and
not “absent.”  Id. at 321.  In a concurring opinion, Justice Willett observed
that, in addition to “deficient” and “absent” reports, “there exists a third,
albeit rare, category:  a document so utterly lacking that, no matter how
charitably viewed, it simply cannot be deemed an ‘expert report’ at all, even a
deficient one.”  Id. at 323 (Willett, J., concurring).  Such a document 

may not purport to be a report at all,
and its author may not have intended it as such.  For example, it may (by its
own terms) be provider correspondence or perhaps “medical or hospital records
or other documents” or other health-related paperwork that, while related to
the patient’s care and condition, neglects altogether to address the
rudimentary elements of an expert report; indeed, it may never and nowhere
accuse anyone of doing anything wrong.  Such information certainly constitutes
discoverable and highly relevant information in a lawsuit, but any claimant
passing off such material as an expert report, and any court treating it as
such, evinces a complete disregard for Chapter 74’s unambiguous statutory
criteria.

 

Id. (footnotes omitted).

            Several
months after Ogletree, in Lewis v. Funderburk, 253 S.W.3d 204
(Tex. 2008), the supreme court enjoyed an “actual sighting of this rare bird.” 
Id. at 210 (Willett, J., concurring).  In Lewis, the defendant
doctor moved to dismiss the plaintiff’s case against him for failure to file an
expert report.  Id. at 206.  In response, the plaintiff pointed to a
“thank-you-for-your-referral letter” in the medical records.  Id.  The
trial court denied the defendant’s motion to dismiss and granted the plaintiff
a thirty-day extension, during which the plaintiff filed a second report.  Id. 
The defendant again moved to dismiss, the trial court again denied the motion,
and the defendant appealed.  Id. at 206-07.  The appellate court
dismissed the appeal for lack of jurisdiction, but the supreme court reversed,
noting that subsection 74.351(c) “defines a timely but deficient report as one
that ‘has not been served,’” and therefore, an interlocutory appeal was
permitted in that case under subsection 74.351(b).  Id. at 207-08; see
Tex. Civ. Prac. & Rem. Code Ann.
§ 51.014 (permitting appeal of interlocutory order dismissing case under
subsection 74.351(b)); id. § 74.351(b) (requiring dismissal when report
“has not been served” within 120 days).  In another concurring opinion, Justice
Willett argued that the defendant in Lewis was entitled to appeal the
trial court’s initial denial of his motion to dismiss for failure to file an
expert report, because the initial report was, in effect, no report at all.  Lewis,
253 S.W.3d at 210 (Willett, J., concurring).  “This doctor-signed letter is no
more a report than a doctor-signed prescription or Christmas card would be.”  Id.
at 211.  In contrast to the report at issue in Ogletree, the initial
report in Lewis “totally omits the required statutory elements, . . .
makes no colorable attempt to demonstrate liability,” and “never once accuse[s]
anyone of doing anything wrong.”  Id. at 211-12 (internal quotations
omitted).  Therefore, according to Justice Willett, the trial court had no
choice but to grant the defendant’s initial motion to dismiss.  Id. at
212.

            Similarly,
in In re Watkins, a health care liability plaintiff filed a purported
expert report that “was merely a narrative of treatment, and failed to address
the standard of care, breach, or causation.”  279 S.W.3d 633, 633 (Tex. 2009)
(orig. proceeding).  After the trial court granted a thirty-day extension, the
plaintiff filed a new report, which the defendant did not challenge.  Id.
at 633-34.  On appeal and by a petition for writ of mandamus, the defendant
sought review of the trial court’s granting of the thirty-day extension.  Id.
at 634.  In a majority opinion, this Court found that, because the trial court
implicitly found the report to be merely deficient—and not so woefully
inadequate as to constitute no report at all—it did not abuse its discretion in
granting the extension.  Watkins v. Jones, 192 S.W.3d 672, 675 (Tex.
App.–Corpus Christi 2006, no pet.) (combined appeal & orig. proceeding). 
Without determining whether the report was absent or merely deficient, a
majority of the supreme court agreed that mandamus was unwarranted.  In re
Watkins, 279 S.W.3d at 634.  The Court reasoned that “[i]f no report was
served, an interlocutory appeal was available, so mandamus is unnecessary.  If
the report was merely deficient, than an interlocutory appeal was prohibited,
and granting mandamus to review it would subvert the Legislature’s limit on
such review.”  Id. (footnotes omitted).

In concurring with
the judgment, Justices Johnson and Willett opined that the purported expert
report in Watkins was not, in fact, an expert report at all, because it
“does not purport to have any relationship to a health care liability or
malpractice case.”  Id. at 635 (Johnson, J., concurring); id. at
637 (Willett, J., concurring) (noting that the purported expert report “omits
all three (four if you count the missing curriculum vitae; five if you count
the absence of any expert opinion)” statutory requirements and stating that
“[t]his is no more an expert report than my son’s tricycle is a Harley”). 
According to Justices Johnson and Willett, because this case involved an absent
report rather than a deficient report, the defendant had the right to
appeal the trial court’s interlocutory order denying dismissal.  Id. at
635-36, 639-40; see Badiga, 274 S.W.3d at 685 (“A provider may pursue an
interlocutory appeal of the denial of a motion to dismiss when no expert report
has been timely served, whether or not the trial court grants an extension of
time.”).  Having found that the defendant had an adequate remedy by appeal,
Justices Johnson and Willett concurred in the majority’s judgment that mandamus
was inappropriate.  In re Watkins, 279 S.W.3d at 636 (Johnson, J.,
concurring); id. at 639-40 (Willett, J., concurring).  In his
concurrence in Watkins, Justice Willett summed up his views on this
issue as previously expressed in Ogletree and Lewis:

I concede that courts, this one
included, cannot decree with micrometer-like precision when something falls
from deficient to so-deficient-it’s-absent.  Each case has its own distinct
facts, but judges are not incapable of applying indistinct lines, or at a
minimum prescribing the outer ones.  One bright-line marker seems beyond
reasonable objection:  when a “report” contains none of the statutorily
prescribed contents. . . .  If a document bears zero resemblance to the
statute—containing nothing that makes a report a report—it cannot receive an
extension.

 

In re Watkins, 279 S.W.3d at 639.

Despite having
reviewed several cases presenting variations on the “no report v. deficient report”
theme, a majority of the high Court has not yet defined exactly when a report
constitutes no report at all.  And, although several courts of appeals have
considered whether a document purporting to be an expert report is in fact
worthy of the name,[2]
no court has yet been asked, as we are here, whether a document disavowing any
liability on the part of the defendant is “no report” at all.  We conclude
that, under the applicable supreme court precedent, such a document must
instead be considered “merely deficient,” and a claimant filing such a document
may be given a thirty-day extension to cure the deficiencies under the statute.

In Ogletree,
the majority of the supreme court implicitly limited “the universe of possible
reports” to “two (and only two) types:  absent reports, which have not been
filed at all and require dismissal of the case, and deficient reports, which
have been timely filed and may receive an extension.”  262 S.W.3d at 323
(Willett, J., concurring).  Justices Johnson and Willett have argued in
concurring opinions that there is in fact a third category of purported
reports—those that have been filed but are “so utterly lacking” as to merit
immediate dismissal—but that view has not been endorsed by a majority of the
Court.[3] 
As our colleagues in Fort Worth stated in 2009:

At present, neither Ogletree
nor any other supreme court opinion holds that a timely served expert report
containing a narrative that fails to include any expert opinion on the standard
of care, breach, or causation is tantamount to no report at all and thus
ineligible for any section 74.351(c) extension.  Until a majority of the
supreme court so holds, such a determination by this court would necessarily
constitute a modification to Ogletree’s absent or deficient expert
report limitation, which would be improper because we are bound as an
intermediate appellate court by supreme court precedent.

 

Scoresby v. Santillan, 287 S.W.3d 319, 324
(Tex. App.–Fort Worth 2009, pet. granted) (citing City of Mission v. Cantu,
89 S.W.3d 795, 809 n.21 (Tex. App.–Corpus Christi 2002, no pet.) (“As an
intermediate appellate court, we are bound to follow the expression of the law
as stated by the Texas Supreme Court and leave changes in the law to that court
or the legislature.”)).  

Here, although Dr.
Brooks’s purported report undisputedly failed to state that Dr. De La Garza had
breached any standard of care, the document was in fact timely served.  Because
neither the supreme court nor this Court has recognized the possibility that a
timely filed report may be, in effect, no report, we have no choice but to
conclude that this is a “deficient report” case, not an “absent report” case.  See
Scoresby, 287 S.W.3d at 325 (concluding that, regardless of whether the
purported expert report was “utterly lacking,” it was timely served and so
cannot be considered “absent” under Ogletree).  Accordingly, the trial
court did not abuse its discretion in denying Dr. De La Garza’s motion to
dismiss and granting Schruz a thirty-day extension to file a compliant report.[4] 
We overrule Dr. De La Garza’s issue.

 

III.  Conclusion

            In light of our
conclusion that the trial court did not err in finding Dr. Brooks’s report to
be merely deficient, rather than no report at all, we dismiss the appeal for
want of jurisdiction.  See Tex.
R. App. P. 43.2(f); Ogletree, 262 S.W.3d at 321 (holding that, if a deficient report is served and the trial
court grants a thirty-day extension, that decision, even if coupled with a
denial of a motion to dismiss, is not subject to interlocutory appeal).

 

 

DORI CONTRERAS GARZA

Justice

 

Dissenting
Memorandum Opinion by Justice Rose Vela.

 

Delivered
and filed the

2nd
day of June, 2011.









[1]
Doctors Hospital is not a party to this appeal.





[2]
Compare Bogar v. Esparza, 257 S.W.3d 354, 364-69, 373 (Tex. App.–Austin
2008, no pet.) (concluding that the purported expert report at issue was no
report as to appellant because it failed to identify appellant, failed to
describe the applicable standard of care, failed to describe how appellant may
have breached the standard of care, and, consequently, failed to implicate any
person’s conduct), Rivenes v. Holden, 257 S.W.3d 332, 338-39 (Tex. App.–Houston
[14th Dist.] 2008, pet. denied) (determining that a purported expert report did
not implicate appellant’s conduct and was not a statutory-compliant expert
report as to appellant because it offered no opinions concerning appellant's
conduct, it failed to discuss how the care rendered by appellant failed to meet
the applicable standard of care, and it failed to set forth how appellant’s
failure to meet the standard of care caused plaintiff to suffer injury, harm,
or damages), and Apodaca v. Russo, 228 S.W.3d 252, 255-58 (Tex. App.–Austin
2007, no pet.) (holding that a purported expert report was no report as to
appellee because it failed to mention appellee and it failed to discuss how the
care rendered by appellee did not meet the applicable standard of care or how appellee's
failure caused the patient to suffer injury, harm, or damages) with Scoresby
v. Santillan, 287 S.W.3d 319 (Tex. App.–Fort Worth 2009, pet. granted)
(finding that “this is not an absent report case . . . in
which we may entertain an interlocutory appeal from the trial court’s denial of
a motion to dismiss because no report has been served”), Austin Heart, P.A.
v. Webb, 228 S.W.3d 276, 282-83 (Tex. App.–Austin 2007, no pet.)
(concluding that a purported expert report, which did not link the doctor’s
conduct with the expert’s conclusions, was nevertheless a “merely deficient”
report, in part because of the report’s “tenor” and the fact that there was
only one physician defendant), and Cook v. Spears, 275 S.W.3d 577,
580-82 (Tex. App.–Dallas 2008, no pet.) (finding purported expert reports to be
merely deficient, and not absent, in part because “the required elements, while
deficient, were not totally absent from the reports such that appellees could
not cure the deficiencies if granted an extension”).

 





[3]
Arguably, even if the view espoused by Justices Johnson and Willett was
controlling, Dr. Brooks’s report would still be considered “deficient” and not
“absent” or “so-deficient-it’s-absent,” because the report does contain some of
the elements prescribed by section 74.351.  Cf. In re Watkins, 279
S.W.3d 633, 639 (Tex. 2009) (orig. proceeding) (Willett, J., concurring) (“If a
document bears zero resemblance to the statute—containing nothing that makes a
report a report—it cannot receive an extension.”).





[4]
The dissent states, without reference to authority, that “if a report that
fails to mention the conduct of a physician is no report as to that physician,
then a report that absolves the physician of negligent conduct is also ‘no
report.’”  But, as noted, the Texas Supreme Court has yet to acknowledge the
possibility that a report, while not absent, might be so deficient that the
trial court loses its discretion to grant a thirty-day extension under
subsection 74.351(c).  See Scoresby, 287 S.W.3d at 324.  It is not the
function of this Court to abrogate or modify established precedent; that
function lies solely with the supreme court.  Lubbock County, Tex. v.
Trammel’s Lubbock Bail Bonds, 80 S.W.3d 580, 585 (Tex. 2002).  We refuse,
as the dissent recommends, to entertain the possibility of a report being
“so-deficient-it’s-absent” when there is no actual supreme court case law to
support that position.