IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00271-CV

 

Royal H. Benson, III, M.D., Individually 

and d/b/a Southwest Center for 

Female Genital Refinement, and 

Benson OB/Gyn Center, PA,

                                                                                                Appellants

 v.

 

Jo Lynn Vernon,

                                                                                                Appellee

 

 

 



From the 85th District
Court

Brazos County, Texas

Trial Court No. 08-000533-CV-85

 



Opinion



 








Jo Lynn Vernon sued Royal H. Benson,
III, M.D., Individually and d/b/a Southwest Center for Female Genital
Refinement, and Benson OB/GYN Center, P.A., for injuries resulting from a
breast augmentation procedure.  After receiving Vernon’s original and
supplemental expert reports, Dr. Benson filed a motion to dismiss Vernon’s lawsuit pursuant to section 74.351(b) of the Civil Practice and Remedies Code. 
The trial court denied the motion.  On appeal, Dr. Benson challenges the denial
of his motion to dismiss, arguing that Vernon’s expert reports (1) fail to
address each claim pleaded by Vernon (issue one); (2) fail to provide a fair
summary of the standard of care (issue two); and (3) contain conclusory opinions
and assumptions regarding the standard of care and causation (issues three and
four).  In one cross-point, Vernon seeks a thirty-day extension to cure any
deficiencies in her report.  We affirm in part, reverse and render in part, and
reverse and remand in part.

STANDARD OF REVIEW AND APPLICABLE LAW

When considering a motion to dismiss
under section 74.351, the
issue for the trial court is whether the report represents a good-faith effort
to comply with the statutory definition of an expert report.  See Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002);
see also Am. Transitional Care Ctrs. of
Tex., Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001).  An “expert report” means:

A written report by an expert that
provides a fair summary of the expert’s opinions as of the date of the
report regarding the applicable standards of care, the manner in which the care
rendered by the physician or health care provider failed to meet the standards
and the causal relationship between that failure and the injury, harm, or
damages claimed.

 

Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (Vernon Supp. 2008).  To
constitute a “good-faith effort,” the report must discuss the standard of care,
breach, and causation with sufficient specificity to: (1) inform the defendant
of the specific conduct the plaintiff has called into question; and (2) provide
a basis for the trial court to conclude that the claims have merit.  Bowie, 79 S.W.3d at 52; Palacios, 46 S.W.3d at 879.

The trial court should look no further
than the report itself, because all the information relevant to the inquiry is contained
within the document’s four corners. Bowie, 79 S.W.3d at 52; Palacios, 46 S.W.3d at 878.  Although
an expert report need not marshal all the plaintiff’s proof, the expert may not
merely state conclusions about the required elements of standard of care,
breach, and causation.  Bowie, 79 S.W.3d at 52.  The
report must include the expert’s opinion on each of the three elements.  Id.; Palacios, 46 S.W.3d at 878.  The
expert must explain the basis of his statements to link his conclusions to the
facts.  Earle v. Ratliff, 998 S.W.2d 882, 890 (Tex. 1999).

We review a trial court’s order on a
motion to dismiss a claim for failure to comply with the expert report
requirements under an abuse-of-discretion standard.  Bowie, 79 S.W.3d at 52; Palacios, 46 S.W.3d at 878.  When
reviewing matters committed to the trial court’s discretion, we may not
substitute our own judgment for the trial court’s judgment.  See Flores v. Fourth Ct. of Appeals, 777 S.W.2d 38, 41 (Tex. 1989).

EXPERT REPORT

In his reports, William H. Gorman, M.D.,
explained that Dr. Benson performed a breast augmentation for Vernon in his
office on a Sunday afternoon.  Dr. Benson sedated Vernon with a local
anesthetic.  Dr. Gorman identified the standard of care:

The standard of care for a surgeon
performing a breast augmentation is to not cause a pneumothorax during the
procedure.  Furthermore, if a pneumothorax is inadvertently/accidentally
caused, the standard of care would require early recognition and appropriate
treatment.  The standard of care for anesthesia during a breast augmentation
requires that an anesthetist, anesthesiologist or R.N. monitor and record vital
signs of an anesthetized or sedated patient at least every five minutes.

    

Dr. Gorman explained that pneumothorax
is a rare but known possible complication of breast augmentation, commonly
caused by the “needle injection for local anesthesia and interoperative
laceration of the pleura.”  This occurs when the needle is advanced too far or
is misplaced/misdirected.  This can be prevented by paying attention to the
“placement in depth of the injection” and the “dissection plane.”  Symptoms of
pneumothorax include respiratory thoracic pain, progressive dyspnea of variable
intensity, cyanosis, subcutaneous emphysema, and diminished air movement. 
Diagnosis is made by clinical examination, chest radiography, or computerized
tomography.  Treatments include symptomatic care, simple observation, regular
radiographic controls, needle aspiration, or insertion of a chest tube.

Dr. Gorman opined that Dr. Benson
breached the standard of care by only recording Vernon’s vital signs every thirty
minutes and by causing Vernon to suffer a pneumothorax during surgery.  He believed
that Dr. Benson caused the pneumothorax by “stray[ing] out of the normal
dissection plane and enter[ing] the pleural cavity.”  He based this conclusion
on the fact that Vernon had no symptoms of pneumothorax before surgery.  In the
recovery room, Vernon complained of shortness of breath.  Dr. Benson neither
ordered a chest x-ray nor listened to her breathing with a stethoscope.  The
following week, Vernon experienced prolonged shortness of breath and
significant chest wall pain.  Dr. Gorman noted that her records contain
complaints regarding “inadequate pain control” and “difficulty breathing.” 
Yet, the pneumothorax went undiagnosed and untreated for nearly a week.  Dr.
Gorman explained that these symptoms should “never be ignored or treated
lightly.”  He opined that Dr. Benson breached the standard of care for surgical
treatment and postoperative care and that Vernon’s “prolonged and painful
course” directly resulted from Dr. Benson’s “procedure and care which fell far
below the normal and expected standard of care.”

            Dr. Gorman further
questioned Dr. Benson’s qualifications and credentials for performing the
procedure.  Dr. Gorman stated that breast augmentations should be performed or
supervised by a board certified plastic surgeon.  He explained that the
American Society of Plastic Surgeons requires surgeries performed under
anesthesia, other than minor local anesthesia and/or minimal oral
tranquilization, to use an accredited and licensed or certified facility.  He
states that it is reasonable to expect a surgeon to have the experience and
training necessary to meet these “stringent credentialing standards” and to
limit his procedures to his training and experience.  Referring to Vernon’s operation, Dr. Gorman opined that “[p]atient safety cannot be a strong
consideration by a doctor who performs surgery in such sub-standard conditions
and with such lack of specialized training.”

ANALYSIS

In issues one, two, three, and four, Dr.
Benson contends that Dr. Gorman: (1) fails to address each claim raised by
Vernon; (2) fails to provide a fair summary of the standard of care; and (3)
bases many conclusions on assumptions unsupported by facts.  

Failure to Address All Claims Raised in
the Petition

Vernon’s
petition alleges negligence resulting in two injuries: the pneumothorax and
asymmetry of her right breast.  She raised numerous allegations regarding each injury,
but Dr. Benson complains that Dr. Gorman’s reports fail to address: (1) improper
placement and failure to assure proper placement of the right breast implant;
(2) failure to refer Vernon to a respiratory specialist; (3) failure to have
Vernon obtain a chest x-ray from an urgent care clinic; (4) failure to identify
the cause of swelling and asymmetry of the right breast; (5) alteration and
fabrication of medical records; (6) future pain and mental anguish; (7) future
medical expenses; (8) past and future physical incapacity, disability, and
disfigurement; and (9) lost earnings.

Citing Schmidt v. Dubose,
259 S.W.3d 213 (Tex. App.—Beaumont 2008, no pet.), Vernon contends that Dr.
Benson’s argument lacks merit.  In Schmidt, the Beaumont Court
considered whether an expert’s “partial
change in opinion expressed during discovery means the expert report did not
represent an objective good faith effort to comply with section 74.351(r)(6).” 
Schmidt, 259 S.W.3d at 218.  Dubose claimed
that Schmidt failed to
recognize that her bile duct was divided during an operation.  See id. at 217-18.  In
his deposition, Dubose’s expert opined that Schmidt incorrectly identified the
bile duct and divided the wrong duct.  Id. at 218.  Finding the report to be a good faith
effort, the Beaumont Court held:

No new cause of action has been asserted
as a result of the partial change in the expert’s opinion in this case. 
Multiple causes of action do not arise dependent on whether the physician was
negligent before, during, or after the wrong cut.  If another health care
liability cause of action is alleged about which no expert report is made, a
different issue may be presented.  This case does not present that issue.

 

Id. (emphasis added).  Schmidt does not address the specific issue
raised in this appeal. 

Dr. Gorman’s reports do not in any way address
the three statutory elements as related to Dr. Benson’s negligence and the asymmetry
of the right breast.  His reports are inadequate as to negligence based on this
claimed injury.  See Farishta
v. Tenet Healthsystem Hosps. Dallas, Inc., 224 S.W.3d 448, 455
(Tex. App.—Fort Worth 2007, no pet.).  The reports fail to inform Dr. Benson of
the specific conduct sued on with respect to asymmetry of the right breast.

Neither does Dr. Gorman address
alteration and fabrication of medical records.  However, this is not a health care
liability claim required to be addressed in an expert report.  See Tex. Civ. Prac.
& Rem. Code Ann. §
74.001(13) (Vernon 2005)
(“‘Health care liability claim’” means a cause of action against a health care
provider or physician for treatment, lack of treatment, or other claimed
departure from accepted standards of medical care, or health care, or safety or
professional or administrative services directly related to health care, which
proximately results in injury to or death of a claimant, whether the claimant's
claim or cause of action sounds in tort or contract.”).

As for damages, Dr. Gorman was only
required to address the standard of care, breach, and causation.  See Palacios, 46 S.W.3d at 878-79. 
In doing so, he need only inform Dr. Benson of the specific conduct Vernon has
called into question and provide a basis for the trial court to conclude that
the claims have merit.  Bowie, 79 S.W.3d at 52; Palacios, 46 S.W.3d at 879.  He
is not required to prove up Vernon’s damages.

In summary, we sustain issue one in part
based on the failure of Dr. Gorman’s reports to address Vernon’s negligence
claim as to asymmetry.  Dr. Benson’s first issue is overruled as to damages and
alteration/fabrication of medical records.




Standard of Care and Causation

            Dr. Benson complains that Dr.
Gorman failed to provide a fair summary of the standard of care by neglecting
to explain how he breached the standard of care, what he should have done
differently to prevent and treat the pneumothorax, or how the appropriate depth
and dissection plane are determined.  He contends that Dr. Gorman’s analysis as
to the standard of care and causation is conclusory and based on assumptions
unsupported by the facts.  Dr. Benson further complains that Dr. Gorman fails to
provide a fair summary of the damages alleged or explain how different
treatment would have prevented Vernon’s shortness of breath and chest pain.

Vernon
was not required to present evidence in the report as if she were actually
litigating the merits.  Palacios, 46 S.W.3d at 879.  The report can be
informal in that the information in the report does not have to meet the same
requirements as the evidence offered in a summary-judgment proceeding or at
trial.  Id.  Dr. Gorman’s reports need only fulfill two required
purposes: (1) inform Dr. Benson of the specific conduct Vernon has called into
question; and (2) provide a basis for the trial court to conclude that the
claims have merit.  Bowie, 79 S.W.3d at 52; Palacios, 46 S.W.3d at 879.  An
expert report need not marshal all of the plaintiff’s evidence.  Bowie, 79 S.W.3d at 52; see
also Palacios, 46 S.W.3d at 878.  After
reviewing the reports, we conclude that the trial court was justified in
finding that they discuss the standard of care, breach, and causation with
sufficient specificity to fulfill the statutory requirements.  See Williams v. Mora, 264 S.W.3d 888, 892 (Tex.
App.—Waco 2008, no pet.); see also Hamilton v. Durgin, No. 10-08-00146-CV, 2008 Tex. App. LEXIS 8356, at *2-5
(Tex. App.—Waco Nov. 5, 2008, no pet.) (mem. op.). 
The trial court did not
abuse its discretion by denying Dr. Benson’s motion to dismiss with regard to
the pneumothorax claim.  We overrule Dr. Benson’s second, third, and fourth
issues.

Extension

Having found that Dr. Gorman failed to
address Vernon’s asymmetry claim, we must address her cross-point in which she contends that we should remand this
cause to the trial court to consider granting a thirty-day extension.

If an expert report has not been served
within the period specified by Subsection (a) because elements of the report
are found deficient, the court may grant one 30-day extension to the claimant
in order to cure the deficiency.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c).  In Gardner v.
U.S. Imaging, Inc., 274 S.W.3d 669 (Tex. 2008), cited by Vernon, the San Antonio Court dismissed the plaintiffs’ claims because an expert report was conclusory
as to causation.  See Gardner, 274 S.W.3d at 670.  The
Supreme Court noted that the
report was not “so deficient as to constitute no report at all.”  Id. at
671 (citing Ogletree v. Matthews, 262 S.W.3d 316, 323 (Tex. 2007)
(Willett, J., concurring) and Lewis
v. Funderburk, 253
S.W.3d 204, 211 (Tex. 2008)
(Willett, J., concurring)).  Without
disturbing the deficiency finding, the Supreme Court vacated the judgment and remanded the
case to the trial court to consider granting an extension to cure.  Id. at 670.  

We, however, question whether Dr. Gorman’s
reports are “so deficient
as to constitute no report at all” as to the asymmetry claim.  Ogletree
and Funderburk guide our analysis.

In Ogletree, the Supreme Court
stated that dismissal is not mandatory for “deficient, but curable, reports;”
rather, the trial court may grant a thirty-day extension to allow parties to
cure the deficiencies.  Ogletree, 262 S.W.3d at 320-21 (“[I]f a
deficient report is served and the trial court grants a thirty day extension,
that decision--even if coupled with a denial of a motion to dismiss--is not
subject to appellate review.”).  In this important respect, a deficient report
differs from an absent report.  Id. at 320.

In his concurrence, Justice Willett explained
that “classification of all purported expert reports as either absent or
deficient may prove inapposite in rare cases--where the claimed ‘report’ is
actually no such thing--and inadvertently expand the availability of the
thirty-day extension provided by section 74.351(c)
beyond what the Legislature intended.”  Id. at 322 (Willett, J.,
concurring).  In addition to absent reports and deficient reports, he
identified a third type of report: “a document so utterly lacking that, no
matter how charitably viewed, it simply cannot be deemed an ‘expert report’ at
all, even a deficient one.”  Id. at 323.  He explained that “some
material does not even rise to the level of a deficient report because it fails
to address the statutorily mandated elements.”  Id.  “Such documents
constitute no expert report at all.”  Id.

To be clear, I am not describing a
situation where “elements of the report have been found deficient,” thus making
the report eligible for an opportunity to cure; rather, I am describing a
situation where elements of the report have not been found at all--where the
plaintiff submits nothing but doctor- or provider-signed material that contains
zero (or practically zero) discussion of what makes a report a report. 
Elements must be present to be labeled deficient; if they are nonexistent, so
is the report.  

 

Id.  This third type of report “merits
dismissal just like an absent report.”  Id.

In Funderburk, Lewis argued that section 74.351(c) “permits
only amendments by the original expert rather than substitutions by a new
one.”  Funderburk, 253 S.W.3d at 208.  The Supreme Court held that the
statute does not prohibit a claimant from “changing experts midstream.”  Id.  In his concurrence, Justice Willett noted that, although the issue was not
before the Court, Funderburk’s “initial ‘report’ was literally no report at all,”
but was a mere “thank-you for-your-referral letter,” which did not address the
required statutory elements and “never once ‘accuse[s] anyone of doing anything
wrong.’”  Id. at 210-11 (Willett, J., concurring).  “When compared with
the standards for expert reports set by the Legislature, this letter is ‘so
utterly lacking that, no matter how charitably viewed, it simply cannot be
deemed an ‘expert report’ at all, even a deficient one.’”  Id. at 211.  “A
wholly absent report is incurable and cannot be deemed a deficient report
eligible for a thirty-day extension.”  Id. at 210.  Dismissal was
mandatory.  Id. at 212.

Dr. Gorman’s reports do not address the
statutory requirements with regard to asymmetry or even suggest that Dr. Benson
did anything wrong in this regard.  As to this injury, the reports are “so
deficient as to constitute no report at all” and dismissal is mandatory.  Gardner, 274 S.W.3d at 670; see Ogletree,
262 S.W.3d at 322-23 (Willett, J., concurring); see also Funderburk, 253 S.W.3d at 211-12 (Willett, J., concurring); Farishta, 224 S.W.3d at 455
(sustaining dismissal of claims not addressed in expert report).

CONCLUSION

We
affirm the portion of the trial court’s order denying Benson’s motion to
dismiss as to Vernon’s pneumothorax claim.  We reverse the portion of the
court’s order denying Benson’s motion to dismiss Vernon’s asymmetry claim and
render a judgment of dismissal on that claim.  In addition, we remand this
cause to the trial court for further proceedings consistent with this opinion,
including a hearing to determine the amount of attorney’s fees and costs to be
awarded to Benson in relation to the dismissal of the asymmetry claim.

 

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

(Chief
Justice Gray concurring and dissenting)

Affirmed in
part; reversed and rendered in part; reversed and remanded in part

Opinion
delivered and filed August 12, 2009

[CV06]

 

 






0;                                                                   Justice

Before Chief Justice Thomas,
      Justice Cummings, and
      Justice Vance
Affirmed
Opinion delivered and filed December 15, 1993
Do not publish